753 S.E.2d 515

Thomas M. CARTER, Debra Carter, and Christopher Michael Carter, Respondents,

v.

The STANDARD FIRE INSURANCE COMPANY and Frank L. Siau Agency, Inc., Defendants,

of whom The Standard Fire Insurance Company is the, Petitioner.

Appellate Case No. 2011–193846.

No. 27340.

Supreme Court of South Carolina.

Heard May 2, 2013.

Decided Dec. 11, 2013.

Rehearing Denied Feb. 6, 2014.

William Pearce Davis, of Baker Ravenel & Bender, LLP, of Columbia, for Petitioner.

William P. Hatfield, of Hyman Law Firm, of Florence, and Robert Norris Hill, of Law Offices of Robert Hill, of Newberry, for Respondents.

Chief Justice TOAL.

The Standard Fire Insurance Company (Standard Fire) seeks review of the court of appeals' decision reversing the trial court's grant of summary judgment in favor of Standard Fire, and finding Thomas M. Carter, Debra Carter, and Christopher Michael Carter (collectively Respondents) were entitled to stack underinsured motorist (UIM) coverage despite an exclusion in Standard Fire's policy purporting to limit a Class I insured's ability to stack such coverage when the vehicles insured under the subject policy were not involved in the accident. We affirm the court of appeals.

### FACTS/PROCEDURAL BACKGROUND

On November 11, 2006, Michael Carter (Michael) was a passenger in his 2006 Dodge Charger, titled in both his and his mother's names and driven by his friend Bernie Collins, when the vehicle was involved in a collision resulting in Michael's paralysis and Collins's death. Respondents brought suit against Collins's estate, alleging that he was driving in a negligent and reckless fashion at the time of the collision, causing the collision and Michael's injuries.

The Dodge Charger was insured by Allstate. Allstate settled with Michael on behalf of Collins's estate, and agreed to pay the available limits of liability coverage, or $250,000, plus another $100,000 in liability coverage under a policy that Allstate issued to Collins, in exchange for a covenant not to execute. In addition, as the insurer of Michael's Dodge Charger, Allstate paid him $500,000 in UIM coverage, comprising $250,000 of coverage on the Dodge Charger, plus $250,000 on another vehicle owned by Michael and insured under his Allstate policy.

Additionally, Michael sought UIM coverage from a Standard Fire insurance policy issued to his parents Thomas and Debra Carter (Thomas and Debra), which was in effect from February 11, 2006, to February 11, 2007, and covered three Chevrolet vehicles owned by them (the Policy). The Policy

provided UIM coverage for each vehicle for bodily injury of $250,000 per person and $500,000 per accident. Thus, Respondents sought $750,000 in UIM coverage from Standard Fire.

However, the Policy contains the following exclusion:

**EXCLUSIONS**

A. We do not provide [UIM] for "bodily injury" or "property damage" sustained by any person:

1. While "occupying" ... any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy....

The Policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." The Policy also provides that "you" and "your" refer to: "1. [t]he 'named insured' shown in the Declarations; and 2. [t]he spouse if a resident of the same household."

Debra removed Michael as a named insured from the Policy prior to the accident. However, it is undisputed that Michael resided with Thomas and Debra throughout the policy period in question, and therefore, as a resident relative, is a Class I insured under the Policy. It is further undisputed that the Policy did not specifically cover Michael's Dodge Charger.

On October 26, 2007, Respondents brought this action against Standard Fire, alleging, *inter alia*, that Standard Fire breached the terms of the Policy by failing to provide UIM coverage to Michael "for serious injuries sustained as a result of an automobile accident."[1] Respondents alleged that Michael should be permitted to stack UIM coverage under the Policy. In its Answer, Standard Fire denied that UIM coverage was available under the Policy, citing the above policy exclusion.

Each of the parties filed separate motions for summary judgment. In their motion, Respondents argued that the exclusion was void because it conflicts with section 38–77–160 of the South Carolina Code[2] and, as a result, Michael was

---

1. Respondents also brought various claims, including the negligent failure to procure insurance, against the Frank L. Siau Agency, Incorporated (the Siau Agency).

2. S.C.Code Ann. 38–77–160 (2002).

entitled to stack UIM coverage. In its motion, Standard Fire maintained, *inter alia,* that (1) its policy specifically excluded UIM coverage for any person injured while occupying a motor vehicle owned by that person or a family member not insured under the Policy; and (2) such an exclusion had been sanctioned by this Court in *Burgess v. Nationwide Mutual Insurance Company,* 373 S.C. 37, 644 S.E.2d 40 (2007).

The circuit court heard the motions on December 18, 2008. On February 18, 2009, the circuit court granted Standard Fire's motion for summary judgment on the grounds that (1) UIM coverage was not available to Respondents by virtue of a valid exclusion of coverage of a vehicle not insured under the Policy; (2) Respondents were not entitled to stack coverages under the Policy because coverage was not available under the exclusion; (3) Respondents were bound by the plain language of the exclusion; and (4) the "Other Insurance" clause in the Policy did not provide for UIM coverage.[3]

Respondents filed a timely Notice of Appeal in the court of appeals on February 27, 2009. In an unpublished opinion, the court of appeals reversed and remanded the trial court's order granting Standard Fire's summary judgment motion. *See Carter v. Standard Fire Ins. Co.,* Op. No. 2011–UP–175 (S.C. Ct.App. filed April 18, 2011). Relying on *Nakatsu v. Encompass Indemnity Company,* 390 S.C. 172, 178, 700 S.E.2d 283, 287 (Ct.App.2010), the court of appeals held that the case must be reversed because the exclusion was inconsistent with statutory provisions allowing Class I insureds to stack UIM. *Id.* The court of appeals refused to reach the remaining issues on appeal because the stacking issue was dispositive. *Id.*

Standard Fire sought review, and this Court granted the petition for writ of certiorari.

## ISSUE

Whether section 38–77–160 of the South Carolina Code permits an insurance company to exclude UIM coverage to a Class I insured when he is occupying a vehicle he owns but does not insure under the subject policy?

---

3. Likewise, the court granted summary judgment in favor of the Siau Agency; however, that ruling is not before this Court on appeal.

## STANDARD OF REVIEW

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP; *Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002) ("An appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP.") (citation omitted).

## ANALYSIS

This case presents the question of whether an insurer may limit a Class I insured's ability to stack UIM coverage through an exclusion purporting to limit stacking only to those vehicles owned by the insured, and insured under the subject policy. Standard Fire argues the court of appeals erred in reversing summary judgment because the policy exclusion at issue is permitted under section 38–77–160 of the South Carolina Code. Under Standard Fire's formulation of that provision, the insurer is required *to offer* UIM coverage to an insured, but is not required to provide coverage unless the insured purchases such coverage, and because the Policy contained a valid exclusion, that coverage was not purchased by Respondents. On the other hand, Respondents argue that the plain language of section 38–77–160, the purpose behind the provision, and the traditional construction of the provision suggest that insurers may not eliminate a resident relative's ability to stack UIM coverage under his parents' policy.

Section 38–77–160 governs stacking,[4] and provides, in relevant part:

> Automobile insurance carriers **shall offer**, . . . . at the option of the insured, [UIM] motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by

---

4. Stacking is defined "as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." *Giles v. Whitaker,* 297 S.C. 267, 268, 376 S.E.2d 278, 279 (1989); *State Farm Mut. Auto. Ins. Co. v. Moorer,* 330 S.C. 46, 60, 496 S.E.2d 875, 883 (Ct.App.1998).

statute. *If, however, an insured or named insured is protected by ... [UIM] coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident.* If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or [UIM] coverage.

S.C.Code Ann. § 38–77–160 (Supp.2012) (emphasis added).

 "The cardinal rule of statutory construction is a court must ascertain and give effect to the intent of the legislature." *State v. Scott,* 351 S.C. 584, 588, 571 S.E.2d 700, 702 (2002) (citing *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 437 S.E.2d 6 (1993)). "The central purpose of the UIM statute is to provide coverage when the injured party's damages exceed the liability limits of the at-fault motorist," and therefore, "[t]he UIM and UM statutes are remedial in nature and enacted for the benefit of injured persons" and "should be construed liberally to effect the purpose intended by the Legislature." *Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 260, 626 S.E.2d 6, 10 (2005) (citations omitted).

 In the context of interpreting an insurance contract, "[s]tatutory provisions relating to an insurance contract are part of the contract as a matter of law." *State Farm Mut. Auto. Ins. Co. v. Calcutt,* 340 S.C. 231, 234, 530 S.E.2d 896, 897 (Ct.App.2000) (citation omitted). To this end, "[UIM] coverage is controlled by and subject to our [UIM] act, and any insurance policy provisions inconsistent therewith are void, and the relevant statutory provisions prevail as if embodied in the policy." *Kay v. State Farm Mut. Auto. Ins. Co.,* 349 S.C. 446, 450, 562 S.E.2d 676, 678 (Ct.App.2002). A policy of automobile insurance must provide at least the minimum amount of coverage outlined in the statute, and "a policy issued pursuant to the law which gives less protection will be interpreted by the court as supplying the protection which the legislature intended." *Id.* at 450, 562 S.E.2d at 678 (quoting *Hamrick v. State Farm Mut. Auto. Ins. Co.,* 270 S.C. 176, 179, 241 S.E.2d 548, 549 (1978)).

■ While we disagree with Respondents' broad assertion that an insurer may never limit an insured's ability to stack, it is well-settled that an insurer cannot contractually limit coverage in contravention of section 38–77–160. *See Ruppe v. Auto—Owners Ins. Co.*, 329 S.C. 402, 405–06, 496 S.E.2d 631, 632–33 (1998) (noting the rule that stacking of statutorily required coverage cannot be contractually prohibited is an oversimplification of our stacking law and declining to apply it to the stacking of *liability* coverage, and stating "stacking may be prohibited by contract if such a prohibition is consistent with statutory insurance requirements."). However, we find that Standard Fire's interpretation of section 38–77–160 fails to account for the portion of the statute that unequivocally states that once the insured **"is protected by ... UIM coverage in excess of the basic limits,"** the insurer **"shall provide"** UIM coverage up to the amount held on the vehicle involved in the accident. Because the exclusion in question conflicts with this clear language, we hold the exclusion is void. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (stating "the rules of statutory interpretation are not needed and the court has no right to impose another meaning" when the statute's language is plain and unambiguous); *State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007) ("All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discovered in the language used.") (citation omitted).

Generally, "[s]tatutorily required coverage is that which is required to be offered or provided." *Ruppe*, 329 S.C. at 404–05, 496 S.E.2d at 632. "[A]n insurer must offer UIM coverage pursuant to [section] 38–77–160 when the insurer extends statutorily required liability coverage." *Howell v. U.S. Fid. & Guar. Ins. Co.*, 370 S.C. 505, 510, 636 S.E.2d 626, 629 (2006). "South Carolina courts have interpreted [section 38–77–160] to allow Class I insureds [5] to stack UIM coverage from multiple

---

5. There are two categories of insureds: (1) Class I insureds, which includes a person named in the policy, the named insured's spouse, or any resident relatives of the named insured, and (2) others known as Class II insureds, *i.e.* permissive users and guests. *Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 331 S.C. 506, 509, 498 S.E.2d 865, 866 (1998); *see also Ohio Cas. Ins. Co. v. Hill*, 323 S.C. 208, 211, 473 S.E.2d 843, 845 (Ct.App.1996); *S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 443 n. 1, 405 S.E.2d 396, 397 n. 1 (1991). Importantly, a

automobile insurance policies." *Kay,* 349 S.C. at 449, 562 S.E.2d at 678.[6] This is so because UIM coverage is considered to be both "personal and portable." *See Burgess,* 373 S.C. at 41, 644 S.E.2d at 42 ("[A]s a general proposition, UIM coverage follows the individual insured rather than the vehicle insured, that is, UIM coverage, like UM, is 'personal and portable.' "). Thus, a Class I insured typically may pursue stacking whether or not he was injured in his vehicle. *See* S.C.Code Ann. § 38–77–30(7) (Class I insureds are insured "while in a motor vehicle or otherwise"); *Howard,* 315 S.C. at 53, 55, 431 S.E.2d at 608, 609–10 (Ct.App.1993) (invalidating an "owned vehicle" exclusion because UIM "is nowhere limited to the use of the insured vehicle, and cannot be so limited by the policy provisions," and allowing a husband, as a Class I insured under his wife's policy covering the involved vehicle, to stack policies of multiple at-home vehicles).

■ However, the amount an insured is permitted to stack from at-home policies is limited to the amount of UIM carried on the vehicle involved in the accident. *See Mooneyham,* 304 S.C. at 446, 405 S.E.2d at 398 ("[T]he amount of coverage which may be stacked from policies on vehicles not involved in an accident is limited to an amount no greater than the coverage on the vehicle involved in the accident."); *but see Brown v. Continental Ins. Co.,* 315 S.C. 393, 396, 434 S.E.2d 270, 272 (1993) (noting that "UM and UIM qualify as 'statutorily required coverage' " because "required coverage includes

---

person is entitled to pursue stacking *only if* he or she is a Class I insured under the at-home policy. *See Hill,* 323 S.C. at 211, 473 S.E.2d at 845 ("The critical question in determining whether an insured has the right to stack is whether he is a Class I or Class II insured.").

**6.** The fact that the involved vehicle was insured by a separate insurance company than the insurance company insuring the at-home vehicles is insignificant under the typical stacking analysis. *See, e.g., Nationwide Mut. Ins. Co. v. Howard,* 288 S.C. 5, 7, 339 S.E.2d 501, 502 (1985) (allowing stacking of UM coverages where insured owned eight vehicles, two of which were covered under a fleet policy issued by one company, three of which were covered under one fleet policy issued by Nationwide, and three of which were covered by separate, individual Nationwide policies); *Am. Sec. Ins. Co. v. Howard,* 315 S.C. 47, 49, 431 S.E.2d 604, 606 (Ct.App.1993) (allowing stacking of UIM coverage where policy covering involved motorcycle was insured by American Security Insurance Company and insured's wife insured three at-home vehicles under a policy issued by South Carolina Insurance Company).

coverage that is required to be provided or *required to be offered,*" but holding that section 38–77–160 prohibits the stacking of UM and UIM when an insured vehicle is not involved in the wreck and because the exclusion tracked the statutory language, it was valid) (citations omitted).

Standard Fire concedes that, but for the Policy exclusion, Michael would be entitled to stack the coverage on each of the three cars insured by the Policy under the normal framework. However, Standard Fire argues that the Court's decision in *Burgess* marked a turning point in stacking jurisprudence by implicitly overruling those cases that stand for the proposition that UIM coverage is "statutorily required" because it is "required to be offered." In particular, Standard Fire relies on Burgess's statement that "public policy is not offended by an automobile insurance policy provision which limits the portability of basic 'at home' UIM coverage when the insured has a vehicle involved in the accident." *See Burgess,* 373 S.C. at 43, 644 S.E.2d at 42. Standard Fire argues that under *Burgess's* rationale, "insurers may restrict or even exclude UIM coverage if their insureds incur damages as a result of an accident involving a vehicle owned by the insured or a resident relative but not insured under the subject policy." Standard Fire notes that because UIM is entirely voluntary, a policy provision limiting basic UIM portability when the insured is involved in an accident while in a vehicle that he owns but does not insure under the subject policy does not violate the statute.[7]

In *Burgess,* this Court considered the validity of a policy provision purporting to limit the portability of UIM coverage where the insured sought coverage from one of his at-home vehicles, even though he did not carry UIM coverage on the vehicle involved in the accident. *Burgess,* 373 S.C. at 39, 644 S.E.2d at 41. The insured suffered injuries from a motor vehicle accident while riding his motorcycle, insured by Alpha Property and Casualty Insurance Company (Alpha). *Id.* The insured's damages were in excess of the at-fault driver's coverage, and the insured had no UIM coverage on his

---

7. This is essentially the same position taken by the dissent. As explained, *infra,* this position is not supported by our precedents or the wording of section 38–77–160.

motorcycle. *Id.* However, he owned three other vehicles insured by Nationwide Mutual Insurance Company (Nationwide), each of which carried $25,000 in UIM coverage. *Id.* Thus, the insured sought to "port" UIM coverage from one of the at-home vehicles, and not to stack coverage. *Id.* at 41 n. 1, 644 S.E.2d at 43 n. 1. Nationwide refused to pay the insured's UIM claim based on the following "other insurance" policy exclusion:

> If a vehicle **owned by you or a relative** is involved in an accident where you or a relative sustains bodily injury or property damage, this policy shall:
> a) be primary if the involved vehicle is your auto described on this policy; or
> b) be **excess** if the involved vehicle **is not your auto described on this policy.** The amount of coverage applicable under this policy **shall be the lesser of the coverage limits under this policy or the coverage limits on the vehicle involved in the accident.**

*Id.* at 39–40, 644 S.E.2d at 41–42.

Under the circumstances, the Court found that public policy was not offended by an insurance policy that purported to limit the portability of UIM when an insured is injured in a vehicle he owns but does not insure under the insurance policy. *Id.* at 41–42, 644 S.E.2d at 43. The Court did not rely on the specific language of section 38–77–160 or any prior decisions. *Id.* Rather, the Court stated the following:

> UIM coverage is entirely voluntary, and permits insureds, at their option, to purchase insurance coverage for situations where they are injured by an at-fault driver who does not carry sufficient liability insurance to cover the insureds' damages. Essentially, the insured is buying insurance coverage for situations, as where he is a passenger in another's vehicle or is a pedestrian, where he cannot otherwise insure himself. When, however, the insured is driving his own vehicle, he has the ability to decide whether to purchase voluntary UIM coverage. Burgess chose not to do so when insuring his motorcycle.
>
> . . . .
>
> We hold that public policy is not offended by an automobile insurance policy provision which limits the portability of

basic "at-home" UIM coverage when the insured has a vehicle involved in the accident. *Compare State Farm Mut. Auto. Ins. Co. v. Calcutt,* 340 S.C. 231, 530 S.E.2d 896 (Ct.App.2000) (endorsement providing for set-off of workers' compensation benefits for UIM valid where UM set-off is not, because UIM coverage is voluntary). Upholding this limit on portability encourages persons to purchase UIM insurance on all their vehicles. To hold, as did the Court of Appeals, that basic UIM is portable even in this situation permits an individual who owns multiple vehicles to purchase UIM insurance on only one vehicle, yet have basic UIM coverage on all. We find this result undesirable. *Id.* at 42, 644 S.E.2d at 43.

In the wake of the *Burgess* opinion, the court of appeals considered a nearly identical factual scenario to the instant case in *Nakatsu.* 390 S.C. 172, 700 S.E.2d 283. In that case, the insured (Nakatsu) was injured in an automobile accident while she resided with her sister and brother-in-law (the Buckners). *Id.* at 174, 700 S.E.2d at 285. Nakatsu received the limits of liability insurance from the at-fault driver's insurer. *Id.* at 175, 700 S.E.2d at 285. Likewise, she collected $25,000 in UIM coverage from a policy she maintained on her own vehicle, which was involved in the accident. *Id.* She also sought UIM coverage from a policy issued by Encompass Indemnity Company (Encompass), which insured three vehicles owned by the Buckners, which held UIM limits of $50,000 per vehicle and $100,000 per accident. *Id.* However, the Buckners' policy contained a similar "owned vehicle" exclusion, which denied coverage when the involved vehicle was owned by the insured but not covered under the policy. *See id.* at 175–76, 700 S.E.2d at 285–86.

Despite stipulating that the policy provisions did not allow her to stack UIM coverages on the three vehicles because she was not driving a vehicle insured under the policy, Nakatsu argued that the provision was invalid because she was a Class I insured, and therefore, she was entitled to stack UIM coverage under section 38–77–160. *Id.* at 177, 700 S.E.2d at 286. Relying on *Burgess,* the trial court granted summary judgment to Encompass. *Id.*

On appeal, the court of appeals reversed the trial court, agreeing with Nakatsu's arguments that the exclusion was

void because it was inconsistent with section 38–77–160 and *Burgess* was inapplicable to the facts. *Id.* at 178, 700 S.E.2d at 286. Noting "[s]tatutorily required coverage is that which is required to be offered or provided," the court found the exclusion violated section 38–77–160. *Id.* at 179–80, 700 S.E.2d at 287 (citation omitted). Moreover, the court of appeals distinguished *Burgess* because it was not a stacking case, opining that Nakatsu, because she was a resident relative of the Buckners, was a Class I insured under their policy, and therefore, unlike in *Burgess,* the issue was whether Nakatsu could stack the Buckners' UIM coverage. *Id.* at 181, 700 S.E.2d at 288. With respect to the policy concerns raised by the *Burgess* court, the court of appeals found they did not apply to Nakatsu's case because the insured in *Burgess* declined UIM coverage, whereas Nakatsu sought to stack UIM coverage she purchased on the vehicle involved in the accident. *Id.*

Standard Fire argues we should overrule *Nakatsu* because it "is largely premised on the proposition that UIM coverage is 'statutorily required' since it is 'required to be offered.'" We agree with the *Nakatsu* court's reasoning, and therefore, decline Standard Fire's invitation to overrule it.

First, *Burgess* is factually distinguishable from the present case and *Nakatsu* in that *Burgess* did not involve stacking. *Burgess,* 373 S.C. at 41 n. 1, 644 S.E.2d at 43 n. 1. For this reason, *Burgess* did not involve section 38–77–160, and this Court did not interpret that section or touch on any of our precedents interpreting that section.

Standard Fire argues that the *Burgess* court's statement that "UIM coverage is entirely voluntary, and permits insureds, at their option, to purchase insurance coverage for situations where they are injured by an at-fault driver who does not carry sufficient liability insurance to cover the insureds' damages," *see Burgess,* 373 S.C. at 42, 644 S.E.2d at 43, directly contradicts language in pre-*Burgess* opinions stating that UIM is "statutorily required" because "it is required to be offered," *see, e.g., Ruppe,* 329 S.C. at 404–05, 496 S.E.2d 631. *Burgess* did not implicitly overrule those cases. Instead, we find that *Burgess* may be reconciled with them. While true, as Standard Fire suggests, we have stated that UIM is

not mandatory coverage in the sense that an insured chooses to purchase excess UIM coverage on a vehicle and a specified amount is not required by statute,[8] we have held it is a statutorily required coverage in the sense it is required to be offered. Our precedents, read in the context of section 38–77–160, unequivocally require the insurer to provide coverage in an amount equal to the excess UIM coverage purchased on the vehicle involved in the accident. Thus, because Michael, a Class I insured under the Policy, *purchased* UIM coverage on the vehicle involved in the accident, the statute requires he be permitted to stack UIM coverages on the at-home vehicles.[9]

In addition, the policy concerns raised by the *Burgess* opinion are not present here because Michael purchased UIM

---

8. *Nationwide Mut. Ins. Co. v. Erwood*, 373 S.C. 88, 644 S.E.2d 62 (2007) (noting that unlike UM coverage, UIM is not mandatory in all automobile insurance policies); *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 154, 311 S.E.2d 723, 726 (1984) ("We hold underinsured motorist coverage is optional coverage provided by an insurance carrier in the event damages are sustained by the insured in excess of the at fault driver's liability coverage, recovery therefrom being additional to any recovery from the at fault motorist, total recovery not to exceed the amount received from the damages sustained."); *cf. State Farm Mut. Auto. Ins. Co. v. Richardson*, 313 S.C. 58, 61, 437 S.E.2d 43, 45 (1993) ("Insurance companies may prohibit the stacking of non-mandatory coverage."); *Giles v. Whitaker*, 297 S.C. 267, 269, 376 S.E.2d 278, 280 (1989) ("Because there is no statutory requirement that State Farm provide liability coverage for vehicles other than the one described in the policy, the policy provisions limiting stacking of liability insurance were valid.").

9. We note that *Burgess* further does nothing to alter the well-settled principle that UIM coverage is both personal and portable. *Cf. Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 728 S.E.2d 477 (2012) (a nonstacking case in which this Court determined the public policy that UIM is personal and portable entitles insureds, who were involved in an accident while riding in a car owned and operated by a resident relative without UIM coverage, to recover UIM benefits from their at-home policies despite the valid portability limitation in the insured's policy that provided the amount of coverage applicable was lesser of the coverage limits under the at-home policy or the coverage limits on the car involved in the accident); *Hogan v. Home Ins. Co.*, 260 S.C. 157, 162, 194 S.E.2d 890, 892 (1973) (considering an exclusion barring UM coverage, and noting that "[UM] coverage is not to provide coverage for the uninsured vehicle but to afford additional protection to an insured. Unlike the provisions relative to liability coverage, the statute plainly affords [UM] coverage to the named insured and resident relatives of his or her household at all times and without regard to the activity in which they were engaged at the time. Such coverage is nowhere

coverage on the vehicle involved in the accident. *See Burgess,* 373 S.C. at 42, 644 S.E.2d at 43 ("Upholding this limit on portability encourages persons to purchase UIM insurance on all their vehicles. To hold, as did the Court of Appeals, that basic UIM is portable even in this situation permits an individual who owns multiple vehicles to purchase UIM insurance on only one vehicle, yet have basic UIM coverage on all. We find this result undesirable.") Rather, to allow the exclusion here would be to permit the insurance company, in the better position to assess risk because it can account for a resident relative in setting premiums, to hinder competition and increase insurance premiums by limiting coverage for a Class I insured to a single policy, meaning the Class I insured could only purchase excess UIM coverage on all of his vehicles on the insurer's terms. We find *this* result undesirable, and more importantly, one not intended by the legislature under the clear language of 38–77–160.

Therefore, we hold the court of appeals correctly determined that section 38–77–160 invalidates the exclusion barring coverage to Respondents.

## CONCLUSION

Based on the foregoing, we affirm the court of appeals' reversal of summary judgment in favor of Standard Fire, and remand this case to the circuit court for further proceedings consistent with this opinion.

**AFFIRMED.**

BEATTY, J., and Acting Justice JAMES E. MOORE, concur. PLEICONES, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

---

limited in the statute to the use of the insured vehicle, and cannot be so limited by the policy provisions.") (citation omitted); *Howard,* 315 S.C. at 52–53, 431 S.E.2d at 608, *overruled on other grounds by Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.,* 331 S.C. 506, 498 S.E.2d 865 (1998) (holding policy containing an exclusion stating the insurer would not provide UIM coverage to a person occupying a motor vehicle owned by the named insured or any family member that was not insured under the policy invalid because UIM coverage "is nowhere limited to the use of the insured vehicle, and cannot be so limited by the policy provisions") (citation omitted).

Justice PLEICONES.

Michael was injured while a passenger in a Dodge Charger he and his mother owned and insured with Allstate. By virtue of his status as a resident relative of his parents, he is an "insured" under the Standard Fire insurance policy purchased by his parents insuring three other vehicles they owned. The trial court upheld the validity of an exclusion in the Standard Fire policy denying underinsured (UIM) coverage where an insured is damaged while occupying a vehicle he owned but did not insure under that policy. The Court of Appeals reversed, and the majority affirms. I would reverse the Court of Appeals because I agree with the trial court that the policy exclusion is valid.

While S.C.Code Ann. § 38–77–160 requires an insurance company to offer UIM coverage, the decision to purchase such coverage is voluntary. *E.g. Burgess v. Nationwide Mut. Ins. Co.*, 373 S.C. 37, 644 S.E.2d 40 (2007). Here, Standard Fire offered such coverage and the parents purchased it, albeit subject to certain exclusions. This UIM exclusion, therefore, does not involve "statutorily mandated coverage" as the majority maintains, since it is only the **offer** of such coverage that is required by § 38–77–160.

In *Burgess, supra,* we acknowledged the 'personal and portable' nature of UIM coverage. Since, however, such coverage is not mandatory, and since limitations on portability are permissible under the "If, however" clause of § 38–77–160, *Burgess* held a policy could lawfully eliminate the portability of UIM coverage when the named insured is involved in an accident while in a vehicle he owns but does not insure under the policy. Therefore, under *Burgess,* had Michael's mother been involved in an accident while occupying the Charger, we would uphold the validity of this Standard Fire exclusion as applied to her. The present case differs from *Burgess* in that the Standard Fire policy's portability exclusion is sought to be applied to an insured, rather than the named insured, injured while driving a vehicle he and a named insured owned but did not insure under the parents' Standard Fire policy.

As I explained in my dissent in *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 728 S.E.2d 477 (2012), when a named

insured purchases a policy that limits UIM, that portability exclusion applies to all the insureds, whether named or resident relatives. Under my view, an insured who is not the owner of the policy is bound by the UIM portability decisions made by the policy owner, a result that the General Assembly mandated in § 38–77–160. *Rhoden,* 398 S.C. at 405, 728 S.E.2d at 483.

Section 38–77–160 provides in the "If, however" clause that where an insured "is protected by [UIM coverage],[10] the policy shall provide he is protected only to the extent of the coverage he has on the vehicle involved in the accident." [11] In my view, the Standard Fire exclusion is consistent with this clause: while Michael was entitled to the 'personal and portable' UIM coverage in his parents' policy because he was an insured, that policy, consistent with the "If, however" clause of § 38–77–160, limited Michael's UIM coverage to the amount bought "on the vehicle involved in the accident." Here, the Standard Fire policy provided no UIM coverage on the involved vehicle since the car was not insured under that policy. I see nothing in Standard Fire's exclusion that violates either public policy or the language of § 38–77–160.

I would reverse the decision of the Court of Appeals.

KITTREDGE, J., concurs.

---

**10.** I read the "If, however" clause to cover two types of voluntary insurance: all UIM coverage and "excess" uninsured motorist (UM) coverage, that is, UM coverage exceeding the statutorily mandated minimum.

**11.** Michael cannot rely on the portion of the "If, however" clause that restricts recovery where the insured is occupying a non-owned vehicle, as he owned the vehicle he was occupying at the time of this accident.