# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

State Farm Mutual Automobile Insurance Company,
Respondent,

v.

Myra M. Windham, Appellant.

Appellate Case No. 2016-002185

---

Appeal From Lexington County
G. Thomas Cooper, Jr., Circuit Court Judge

---

Opinion No. 5764
Heard October 15, 2019 – Filed August 19, 2020

---

### REVERSED

---

Stephen H. Cook and John K. Koon, both of Koon Cook
and Walters, LLC, of Columbia, for Appellant.

Alfred Johnston Cox and Jessica Waller Laffitte, both of
Gallivan, White & Boyd, PA, of Columbia, for
Respondent.

---

**KONDUROS, J.:** Myra M. Windham appeals the circuit court's grant of summary judgment to State Farm Mutual Automobile Insurance Company on its declaratory judgment action. State Farm sought a determination that Windham could not stack her underinsured motorist (UIM) coverage from her policies with it when she was in an automobile accident while driving a rental car. We reverse.

## FACTS/PROCEDURAL HISTORY

Windham was involved in an automobile accident on September 29, 2012. The other party's insurance supplied her with a rental car. On October 5, 2012, while she was driving the rental car, she was involved in another accident. At the time, Windham and her husband (collectively, the Windhams) had multiple automobile insurance policies with State Farm. State Farm filed a declaratory judgment action seeking a determination that Windham could not stack UIM coverage from multiple policies. The parties stipulated to the following facts before the circuit court:

> 1. On September 29, 2012, . . . Windham . . . was involved in an automobile accident with Stephen H. Keever . . . while operating her 2007 Toyota Camry, which was repaired sometime after the October 5, 2012 accident.
>
> 2. On October 5, 2012, six days after the first wreck, . . . Windham was involved in an automobile accident with Jennifer Mary McArdle . . . while operating a 2013 Dodge rental car from Enterprise Leasing Corporation as a replacement for her automobile which was damaged and out of service from the September 29, 2012 accident.
>
> 3. Windham was using the rental car on October 5, 2012, as a temporary substitute vehicle because her vehicle had been rendered inoperable following the accident on September 29, 2012.
>
> 4. The rental car was paid for by Keever's liability carrier, Allstate Insurance Company.
>
> 5. None of the Windhams' vehicles were involved in the accident on October 5, 2012.
>
> 6. Windham was injured as a result of the October 5, 2012[] accident and claims that her injuries exceed the amount of McArdle's liability insurance, which has already been paid in full.

7. State Farm issued five automobile policies . . . ("the Policy or Policies")[] to Myra M. Windham and/or Paul A. Windham that were in effect at the time of the accidents. All of the Policies contain identical language.

. . . .

9. . . . Windham was an insured under all of the aforementioned Policies issued by State Farm.

10. The 2013 Dodge rental car meets the definition of a "temporary substitute car" as defined by each of the Policies.

11. The Dodge owned by Enterprise Leasing and rented to Windham at the time of the accident is not a vehicle shown under "YOUR CAR" on the Declarations Page of any of the Policies issued to Myra[] M. Windham and/or Paul A. Windham.

12. The Dodge rental car being driven by Windham at the time of the October 5, 2012 accident does not meet the definition of "owned by" in the policy.

13. State Farm has paid a single limit of UIM from one of the Windhams' policies in the amount of $100,000.00 to Windham as a result of the October 5, 2012 accident.

14. State Farm seeks a determination from this [c]ourt that Windham is not permitted to stack UIM coverage under the terms of State Farm's Policies or South Carolina law because none of her vehicles were involved in the accident on October 5, 2012.

15. . . . Windham seeks a determination from this [c]ourt that she is entitled to stack the remaining UIM limits from her other Policies with State Farm because the 2013 Dodge rental car qualifies as a temporary substitute vehicle.

One of the first sections of the car policy booklet from State Farm is entitled "**DEFINITIONS.**"  The first sentence of that section of states, "*We* define certain words and phrases below for use throughout the policy.  Each coverage includes additional definitions only for use with that coverage."  Below are some relevant definitions from that section.

> *Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:
>
> 1.  is *owned by:*
>
>     a.  *you;*
>
>     b.  any *resident relative;*
>
>     c.  any other *person* who resides primarily in *your* household; or
>
>     d.  an employer of any *person* described in a., b., or c. above; nor
>
> 2. has been operated by, rented by, or in the possession of:
>
>     a.  *you;* or
>
>     b.  any *resident relative* during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss.*
>
> *Owned By* means:
>
> 1.  owned by;
>
> 2.  registered to; or
>
> 3.  leased, if the lease is written for a period of 31 or more consecutive days, to.

***Temporary Substitute Car*** means a ***car*** that is in the lawful possession of the *person* operating it and that:

1.  replaces ***your car*** for a short time while ***your car*** is out of use due to its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  damage; or

    e. theft; and

2.  neither ***you*** nor the ***person*** operating it own or have registered.

If a ***car*** qualifies as both a ***non-owned car*** and a ***temporary substitute car,*** then it is considered a ***temporary substitute car*** only.

***Your Car*** means the vehicle shown under "YOUR CAR" on the Declarations Page.  ***Your car*** does not include a vehicle that ***you*** no longer own or lease.

If a ***car*** is shown on the Declarations Page under "YOUR CAR[,"] and ***you*** ask ***us*** to replace it with a ***car*** newly ***owned by you,*** then the ***car*** being replaced will continue to be considered ***your car*** until the earliest of:

1.  the end of the 30th calendar day immediately following the date the ***car*** newly ***owned by you*** is delivered to ***you;***

2.  the date this policy is no longer in force; or

3.  the date ***you*** no longer own or lease the ***car*** being replaced.

In the section pertaining to UIM, the policy booklet states:

**If Other Underinsured Motor Vehicle Coverage Applies**

1. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustain[s] *bodily injury* or *property damage* while *occupying your car.*

2. Except as provided in item 1. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

3. If:

    a. *you* or any *resident relative* sustains *bodily injury* or *property damage:*

       (l) while *occupying* a motor vehicle not *owned by you* or any *resident relative;* or

       (2) while not *occupying* a motor vehicle; and

    b. Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* **or** *property damage,* then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

4. If *you* or any *resident relative* sustains *bodily injury* or *property damage* while *occupying* a motor vehicle other than *your car* that is *owned by you* or any *resident relative,* then this coverage applies only to

the extent of the underinsured motor vehicle coverage applicable to the motor vehicle that the **insured** was **occupying**.

However, if the motor vehicle that the **insured** was **occupying** was not insured for underinsured motor vehicle coverage at the time of the accident, then the maximum amount that may be paid from all policies combined that are issued to **you** or any **resident relative** by the **State Farm Companies** is the minimum limits required by the **Financial Responsibility Act**. **We** may choose one or more policies from which to make payment.

5. Subject to items l., 2., 3., and 4. above, if this policy and one or more other sources provide underinsured motor vehicle coverage for the same damages on a:

   a. primary basis, then **we** will pay the proportion of damages payable as primary that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage; or

   b. excess basis, then **we** will pay the proportion of damages payable as excess that the applicable limit of this coverage under this policy bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

Both parties filed motions for summary judgment. Following a hearing on the motions, the circuit court issued an order granting State Farm's motion and denying Windham's. The court found:

In order for stacking to be allowed under the Policies, Windham must be operating a car that is "owned by" an insured. She has stipulated that she did not own it, it was not registered to her[,] and she was not leasing it for a

period of more than 31 days.  Therefore, the rental car does not meet the definition of "owned by[,"] and Windham is not permitted to stack under the terms of the UIM coverage.

This appeal followed.

**STANDARD OF REVIEW**

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder.  *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001).  When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the circuit court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).  In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party.  *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

In *Bell v. Progressive Direct Insurance Co.*, 407 S.C. 565, 570, 572, 576, 757 S.E.2d 399, 401-02, 404 (2014), on appeal from the grant of summary judgment in a declaratory judgment action, the supreme court noted "both parties stipulated in the circuit court that the matters under consideration were matters of law for the court."  The supreme court observed:

> "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue."  *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).  "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law."  *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 46, 717 S.E.2d 589, 592 (2011) (citation omitted).  "In an action at law tried without a jury, the appellate court will not disturb the trial court's findings of fact unless there is no evidence to reasonably support them."  *Id.* at 46-47, 717 S.E.2d at 592 (citation omitted).  However, an appellate

court may make its own determinations concerning questions of law and need not defer to the trial court's rulings.

*Bell*, 407 S.C. at 576, 757 S.E.2d at 404-05.

## LAW/ANALYSIS

Windham argues the circuit court erred in granting State Farm summary judgment based on a determination the Policy prohibited her from stacking UIM coverage because she was driving a rental car. She contends the relevant statutes treat the vehicle in question the same as the insured's own vehicle, prohibiting any limitation on stacking. She further asserts the federal district court decision she presented to the circuit court was correctly reasoned. We agree.[1]

"The central purpose of the UIM statute is to provide coverage when the injured party's damages exceed the liability limits of the at-fault motorist . . . ." *Carter v. Standard Fire Ins. Co.*, 406 S.C. 609, 615, 753 S.E.2d 515, 518 (2013) (quoting *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 260, 626 S.E.2d 6, 10 (2005)). "[T]herefore, '[t]he UIM and [uninsured motorist] statutes are remedial in nature and enacted for the benefit of injured persons' and 'should be construed liberally to effect the purpose intended by the Legislature.'" *Id.* (second alteration by court) (quoting *Floyd*, 367 S.C. at 260, 626 S.E.2d at 10).

"Insurance policies are subject to general rules of contract construction." *Standard Fire Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 421, 392 S.E.2d 460, 461 (1990). "We must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary, and popular meaning. We should not torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Fritz-Pontiac-Cadillac-Buick v. Goforth*, 312 S.C. 315, 318, 440 S.E.2d 367, 369 (1994). "The foremost rule in interpreting an insurance contract is to give effect to the intent of the parties as shown by the language of the contract itself." *Dorman v. Allstate Ins. Co.*, 332 S.C. 176, 178, 504 S.E.2d 127, 129 (Ct. App. 1998). "When the contract language is clear and unambiguous, the language alone determines the contract's force, and terms must be construed to give

---

[1] Initially, State Farm asserts Windham's issue on appeal is not preserved for review. We find Windham's argument on appeal is preserved for appellate review because there is no real difference between what she argued to the circuit court and what she argues here. Accordingly, we address the merits of Windham's appeal.

effect to their 'plain, ordinary, and popular meaning.'" *Id.* (quoting *Gray v. State Farm Auto Ins. Co.*, 327 S.C. 646, 650, 491 S.E.2d 272, 274 (Ct. App. 1997)). However, "[a]mbiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995).

"Stacking refers to an insured's recovery of damages under more than one insurance policy in succession until all of his damages are satisfied or until the total limits of all policies have been exhausted." *State Farm Mut. Auto. Ins. Co. v. Moorer*, 330 S.C. 46, 60, 496 S.E.2d 875, 883 (Ct. App. 1998). "Stacking of UIM coverage, which is a statutorily required coverage, is governed specifically by statute." *Nakatsu v. Encompass Indem. Co.*, 390 S.C. 172, 179, 700 S.E.2d 283, 287 (Ct. App. 2010). When interpreting an insurance contract, statutory provisions are considered part of the contract as a matter of law. *Carter*, 406 S.C. at 615, 753 S.E.2d at 518. "To the extent a policy conflicts with an applicable statute, the statute prevails." *Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.*, 406 S.C. 534, 539, 753 S.E.2d 437, 440 (Ct. App. 2013). "All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discovered in the language used." *State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007). "[UIM] coverage is controlled by and subject to our [UIM] act, and any insurance policy provisions inconsistent therewith are void, and the relevant statutory provisions prevail as if embodied in the policy." *Carter*, 406 S.C. at 615, 753 S.E.2d at 518 (alterations by court) (quoting *Kay v. State Farm Mut. Auto. Ins. Co.*, 349 S.C. 446, 450, 562 S.E.2d 676, 678 (Ct. App. 2002)).

"Generally, stacking of additional coverage for which the insured has contracted is permitted unless limited by statute or a valid policy provision." *Ruppe v. Auto-Owners Ins. Co.*, 329 S.C. 402, 404, 496 S.E.2d 631, 631-32 (1998). "Construing specific statutory language, we have held an insured is entitled to stack [UIM] . . . coverage in an amount no greater than the amount of coverage on the vehicle involved in the accident. To this extent, stacking cannot be contractually prohibited." *Id.* at 405, 496 S.E.2d at 632 (footnote and citation omitted); *see also Carter*, 406 S.C. at 616, 753 S.E.2d at 518 (noting "an insurer cannot contractually limit coverage in contravention of section 38-77-160 [of the South Carolina Code (2015)]"). However, "stacking may be prohibited by contract if such a prohibition is consistent with statutory insurance requirements." *Ruppe*, 329 S.C. at 406, 496 S.E.2d at 633.

"The critical question in determining whether an insured has the right to stack is whether he is a Class I or Class II insured." *Ohio Cas. Ins. Co. v. Hill*, 323 S.C. 208, 211, 473 S.E.2d 843, 845 (Ct. App. 1996). "The two classes of insureds are: (1) the named insured, his spouse[,] and relatives residing in his household[] and (2) any person using, with the consent of the named insured, the motor vehicle to which the policy applies and a guest in the motor vehicle." *Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 331 S.C. 506, 509, 498 S.E.2d 865, 866 (1998). "A Class I insured is an insured or named insured who has a vehicle involved in the accident. An insured is a Class II insured if none of his vehicles are involved in the accident." *Ohio Cas. Ins. Co.*, 323 S.C. at 211, 473 S.E.2d at 845 (citation omitted). "Only a Class I insured may stack." *Id.*

"South Carolina courts have interpreted [section 38-77-160] to allow Class I insureds to stack UIM coverage from multiple automobile insurance policies." *Kay*, 349 S.C. at 449, 562 S.E.2d at 678. That section provides:

> [Automobile insurance] carriers shall . . . offer, at the option of the insured, [UIM] coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. *If, however, an insured or named insured is protected by . . . [UIM] coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.*

S.C. Code Ann. § 38-77-160 (emphasis added).

In *Jackson v. State Farm Mutual Automobile Insurance Co.*, 288 S.C. 335, 337, 342 S.E.2d 603, 604 (1986), the supreme court held, "A policy provision [that] purports to limit stacking of statutorily-required coverage is invalid." However, in *Ruppe*, the supreme court diminished this statement when considering whether a policy that prohibited the stacking of liability coverage was valid, noting, "Dicta in *Jackson* . . . states the rule that stacking of statutorily required coverage cannot be

contractually prohibited.  A review of current stacking cases, however, indicates this statement is an oversimplification of our stacking law and we decline to apply it here."  329 S.C. at 405, 496 S.E.2d at 632 (footnote omitted).

> [A] Class I insured typically may pursue stacking whether or not he was injured in his vehicle.  *See* S.C. Code Ann. § 38-77-30(7) (Class I insureds are insured "while in a motor vehicle or otherwise"); *Am. Sec. Ins. Co. v. Howard*, 315 S.C. 47, 53, 55, 431 S.E.2d 604, 608, 609-10 (Ct. App. 1993) (*invalidating an "owned vehicle" exclusion because UIM "is nowhere limited to the use of the insured vehicle, and cannot be so limited by the policy provisions*," and allowing a husband, as a Class I insured under his wife's policy covering the involved vehicle, to stack policies of multiple at-home vehicles)[, *overruled on other grounds by Concrete Servs., Inc.*, 331 S.C. at 513 n.4, 498 S.E.2d at 868 n.4].

*Carter*, 406 S.C. at 617, 753 S.E.2d at 519 (emphasis added).

In *Nationwide Mutual Insurance Co. v. Rhoden*, 398 S.C. 393, 401 n.5, 728 S.E.2d 477, 481 n.5 (2012), our supreme court looked at dicta from the case of *Concrete Services, Inc.*, 331 S.C. at 512, 498 S.E.2d at 868.  *Rhoden* noted the *Concrete Services* court "engaged in a 'purely academic' discussion to clarify 'whether, in order to stack UIM coverage, an insured must own the vehicle involved in the accident.'"  *Rhoden*, 398 S.C. at 402 n.5, 728 S.E.2d at 481 n.5 (quoting *Concrete Services, Inc.*, 331 S.C. at 512, 498 S.E.2d at 868).  "The court held that a Class I insured need not 'own' the vehicle in order to stack UIM coverage."  *Id.* at 402 n.5, 728 S.E.2d at 481-82 n.5.  *Concrete Services* stated, "[I]n order to 'have' a vehicle involved in the accident, it is necessary only that the insured qualify as a Class I insured."  331 S.C. at 513, 498 S.E.2d at 868.  The *Concrete Services* court further noted, "We have never required 'ownership' as a prerequisite to stacking; on the contrary, we have consistently held the determinative factor is Class I status."  *Id.* (footnote omitted).  "Accordingly, we hold that prior cases requiring a person to 'have' a vehicle involved in the accident as a prerequisite to stacking mean only that a person must be a Class I insured with respect to a vehicle involved in the accident . . . ."  *Id.*

The *Rhoden* court found *Concrete Services* distinguishable because it was a stacking case and *Rhoden* did not involve stacking but instead concerned

portability. *Rhoden*, 398 S.C. at 398, 402 n.5, 728 S.E.2d at 479, 482 n.5. However, the *Rhoden* court noted "the ambiguity of section 38-77-160 remains the same, although *Concrete Services* has chosen an alternative interpretation *in light of the different public policy considerations in a stacking context* not present in this case." *Id.* at 402 n.5, 728 S.E.2d at 482 n.5 (emphasis added). "[A]t best, the statutory language [of section 33-77-160] is ambiguous . . . ." *Id.* at 402, 728 S.E.2d at 482.

The South Carolina district court case provided by Windham in her brief on appeal and to the circuit court, *State Farm Fire & Casualty Insurance Co. v. Holmes*, No. 6:14-CV-04050-TMC (D.S.C. Jan. 7, 2016), has similar facts to the present case. In that case, the district court found:

> The pivotal issue in this case is whether the vehicle involved in this accident, a rental car, is a non-owned car under the policy so as to allow for stacking. Holmes was driving a rental car because she had been involved in another accident on April 14, 2010, and her car was being repaired. State Farm contends that the rental car was owned by the rental company and not owned by Holmes. Defendants contend that the rental car was a temporary substitute car and because the policy specifically provides that a temporary substitute car is "not a non-owned car," the rental car should be treated no differently than either of Holmes'[s] insured vehicles.
>
> Holmes was driving a rental car because her car was being repaired after having been damaged in a prior accident two weeks earlier. She was using the rental car as a substitute car while her car was being repaired. Clearly, the rental car Holmes was using in this case falls under the policy's definition of a temporary substitute car. And as the policy specifically states that a temporary substitute car is "not a non-owned car," the policy allows for stacking under the circumstances of this case.

*Id.* We acknowledge "a federal court decision interpreting state law is not binding on this [c]ourt." *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 473 n.9, 674 S.E.2d 154, 161 n.9 (2009). However, "we find the [district's court's] reasoning logical

and its conclusion persuasive." *Phillips v. Periodical Publishers' Serv. Bureau, Inc.*, 300 S.C. 444, 446, 388 S.E.2d 787, 789 (1989).

Windham is a named insured or the spouse of a named insured under all of her and her husband's policies. Stacking of UIM coverage is allowed if the insured is a Class I insured and has the UIM coverage on the vehicle involved in the accident. *See Kay*, 349 S.C. at 449, 562 S.E.2d at 678 ("South Carolina courts have interpreted [section 38-77-160] to allow Class I insureds to stack UIM coverage from multiple automobile insurance policies."). Windham had UIM coverage on her car that was damaged in the first accident that caused her to be driving the rental car. Windham's rental vehicle took the place of her vehicle, as the policy booklet provides: "***Temporary Substitute Car*** means a ***car*** that is in the lawful possession of the ***person*** operating it and . . . replaces ***your car*** for a short time while ***your car*** is out of use due to . . . repair . . . [or] damage . . . ." Accordingly, she had a car in the accident and was a Class I insured. *See Rhoden*, 398 S.C. at 401, 728 S.E.2d at 481 ("[A] Class I insured is an insured or named insured who 'has' a vehicle involved in the accident."); *id.* at 402 n.5, 728 S.E.2d at 482 n.5 ("'[I]n order to "have" a vehicle involved in the accident, it is necessary only that the insured qualify as a Class I insured. . . . We have never required "ownership" as a prerequisite to *stacking* . . . . Accordingly, we hold that prior cases requiring a person to "have" a vehicle involved in the accident as a prerequisite to *stacking* mean[s] only that a person must be a Class I insured.'" (omissions, alterations, and emphases all by court) (quoting *Concrete Servs.*, 331 S.C. at 513, 498 S.E.2d at 868)). Because she was a Class I insured, she is required by statute to be allowed to stack her UIM coverage from all of her policies.

In *Burgess v. Nationwide Mutual Insurance Co.*, the court found not allowing Burgess UIM coverage did not offend public policy because he had declined UIM coverage for the vehicle that he owned that he was driving during the accident. 373 S.C. 37, 42, 644 S.E.2d 40, 43 (2007). That is not the case here. Windham had UIM coverage on the car for which the rental car was acting as a substitute through her policy. She is simply seeking to stack the other policies under which she is a Class I insured. The Windhams had opted for $100,000 in UIM coverage on each of their five vehicles. Windham did not choose to get in an accident that damaged her vehicle, which was the reason she was driving the rental car instead of her vehicle. The rental car takes the place of her own vehicle, and she should be allowed to stack as she would have been if she had been driving her vehicle that

was damaged in the first accident.[2]  Accordingly, the trial court's grant of summary judgment to State Farm is

**REVERSED.**

**LOCKEMY, C.J., and HILL, J., concur.**

---

[2] Windham also argues that when the policy is read naturally and in view of an insured's reasonable expectations, it treats the rented vehicle the same as her vehicle.  Based on our above determination, we need not address this assertion. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).