728 S.E.2d 477

**NATIONWIDE MUTUAL INSURANCE COMPANY, Petitioner,**

v.

**Kelly RHODEN, Ashley Arrieta and Emerlynn Dickey, Respondents.**

No. 27131.

Supreme Court of South Carolina.

Heard Nov. 15, 2011.
Decided June 13, 2012.
Rehearing Denied July 31, 2012.

394

J.R. Murphy and Ashley B. Stratton, both of Murphy & Grantland, of Columbia, for Petitioner.

Dennis J. Rhoad and Sally H. Rhoad, both of Murphy & Grantland, of Moncks Corner, for Respondents.

Chief Justice TOAL.

Petitioner, Nationwide Mutual Insurance Company (Nationwide), contends that the court of appeals erred in ruling that Respondents Kelly Rhoden and Emerlynn Dickey are entitled to underinsured motorist (UIM) coverage under Kelly Rhoden's policy covering two "at-home" vehicles. We affirm based on South Carolina's well-settled public policy that UIM coverage is personal and portable.

### FACTS/ PROCEDURAL BACKGROUND

Respondents Kelly Rhoden (Rhoden) and her daughters, Ashley Arrieta (Arrieta) and Emerlynn Dickey (Dickey), were involved in a motor vehicle accident while riding in a vehicle owned and operated by Arrieta. The parties stipulated that the Respondents are relatives residing in the same household, and that Arrieta's insurance policy with Nationwide did not provide UIM coverage.

Rhoden owned two vehicles that she also insured through Nationwide under a policy that did provide UIM coverage. Rhoden's policy contained a term specifying that the insurance it provided was primary when the covered vehicle was in-

volved in the accident but excess when the involved vehicle was not the covered vehicle but was owned by the policyholder or a resident relative. The policy provides:

3. If a vehicle owned by you or a relative is involved in an accident where you or a relative sustains bodily injury or property damage, this policy shall:

 a) be primary if the involved vehicle is your auto described on this policy; or

 b) be excess if the involved vehicle is not your auto described on this policy. *The amount of coverage applicable under this policy shall be the lesser of the coverage limits under this policy or the coverage limits on the vehicle involved in the accident.*

(Emphasis added).

Nationwide brought a declaratory judgment action seeking a determination that UIM coverage was not available to any of the Respondents under Rhoden's policy. Nationwide contends that because Arrieta's policy had no UIM coverage, clause 3(b), a portability limitation clause, operates to prevent any of the Respondents from recovering under Rhoden's policy.[1]

The trial court held that UIM coverage under Rhoden's policy was available to all three Respondents because such coverage is personal and portable, and Respondents were either named insureds or resident relatives under Rhoden's policy. Nationwide appealed the decision to the court of appeals, which reversed the trial court with regard to Arrieta. Nevertheless, the court of appeals affirmed the trial court's ruling that UIM coverage was available to Rhoden and Dickey under Rhoden's policy. It held that, while public policy supports the 3(b) portability limitation as against owners of an involved vehicle who have the ability to purchase UIM coverage but choose not to do so, it is offended when the limitation operates against non-owners, including resident relatives, because such non-owners are unable to ensure that the owner purchases UIM coverage. We granted certiorari to review this ruling.

---

1. Under 3(b), if the vehicle involved in the accident had no UIM coverage, then UIM coverage from other vehicles owned by Rhoden could not be used.

ISSUE

Whether public policy is offended by a portability limitation clause preventing non-owner resident relatives from importing UIM coverage from an at-home vehicle's policy when the involved vehicle lacks UIM coverage.

STANDARD OF REVIEW

The standard of review in a declaratory action is determined by the underlying issues. *Felts v. Richland Cnty.*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). When the purpose of the underlying dispute is to determine if coverage exists under an insurance policy, the action is one at law. *Goldston v. State Farm Mut. Auto. Ins. Co.*, 358 S.C. 157, 166, 594 S.E.2d 511, 516 (Ct.App.2004) (citation omitted). In an action at law, tried without a jury, the appellate court will not disturb the trial court's findings of fact unless they are found to be without evidence that reasonably supports those findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, "[w]hen an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." *In re Estate of Boynton*, 355 S.C. 299, 301, 584 S.E.2d 154, 155 (Ct.App.2003) (citation omitted). In such a situation, the appellate court does not have to defer to the trial court's findings. *Id.* at 301–02, 584 S.E.2d at 155 (citations omitted).

ANALYSIS

The court of appeals determined that public policy is offended by a limitation on UIM portability when applied to resident relatives like Rhoden and Dickey who do not own the vehicle involved in the accident. We agree.

It is axiomatic that "freedom of contract is subordinate to public policy[, and] agreements that are contrary to public policy are illegal." *Branham v. Miller Elec. Co.*, 237 S.C. 540, 545, 118 S.E.2d 167, 169 (1961); *United Servs. Auto. Ass'n v. Markosky*, 340 S.C. 223, 226, 530 S.E.2d 660, 662 (Ct.App.2000) ("[I]nsurers have the right to limit their liability and impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or public policy."). Our state's well-settled public

policy that UIM coverage is personal and portable can be traced as far back as *Hogan v. Home Insurance Company,* 260 S.C. 157, 162, 194 S.E.2d 890, 892 (1973), where this Court found that limitations placed on the portability of UIM coverage contravened "the broad coverage required by [ ] statute." Through the years, this public policy has been consistently reaffirmed by this Court. *See, e.g., Burgess v. Nationwide Mutual Insurance Company,* 373 S.C. 37, 41, 644 S.E.2d 40, 42 (2007) ("[A]s a general proposition, UIM coverage follows the individual insured rather than the vehicle insured, that is, UIM coverage, like UM, is 'personal and portable.' "). Such a long and established precedent must be followed faithfully again here.

Accordingly, we find that our state's well-settled public policy that UIM coverage is personal and portable entitles Rhoden and Dickey to UIM coverage notwithstanding the portability limitation contained in the insurance contract. However, the denial of coverage to Arrieta, consistent with the insurance contract's portability limitation, does not violate public policy pursuant to our decision in *Burgess* and section 38–77–160 of the South Carolina Code given that Arrieta chose not to purchase UIM coverage for her vehicle, which was involved in the accident. 373 S.C. at 41, 644 S.E.2d at 42 ("Public policy is not offended by an automobile insurance policy provision which limits the portability of basic 'at-home' UIM coverage when the insured has a vehicle involved in the accident.").[2] The dissent would deny coverage to all three

2. With UIM coverage, the insured is "[e]ssentially ... buying insurance coverage for situations, as where he is a passenger in another's vehicle or ... where he cannot otherwise insure himself." *Burgess,* 373 S.C. at 42, 644 S.E.2d at 43. Here Rhoden purchased UIM coverage for herself and Dickey for situations in which they could not otherwise insure themselves, like when they were passengers in Arrieta's car. Despite Nationwide's assertion, it was unlikely that Rhoden and Dickey had any more influence over the insurance coverage purchased on a relative's vehicle, such as Arrieta's, than that of any other individual with whom they may travel. Furthermore, the same considerations underpinning the exception to the general public policy that UIM is personal and portable in *Burgess* are not present in this case because unlike the petitioner in *Burgess,* Rhoden and Dickey are not owners of the vehicles. *See id.* ("[P]ublic policy [is not] offended.... [w]hen [ ] the insured is driving *his own* vehicle [because] he has the ability to

Respondents based on the notion that public policy "requires limitation of UIM coverage portability when an insured seeks coverage beyond that purchased on the involved vehicle." The dissent does not elaborate on the reasons which would support the adoption of such a public policy, but finds the logic for such a public policy from the express words of section 38–77–160 of the South Carolina Code, concluding that the "General Assembly has seen fit to .... limit excess UM and all UIM coverage for 'insureds.'"

 As we stated in *Burgess,* section 38–77–160 does not apply in a non-stacking [3] case such as this:

> The Court of Appeals held the "If, however" sentence in § 38–77–160 applied only to stacking cases, found the issue here was not stacking....
>
> ... [W]e agree with the Court of Appeals that the "if, however" sentence in § 38–77–160, relied upon by Nationwide here, does not literally apply to these facts since Burgess is not attempting to stack excess UIM coverage from his Nationwide policy.... The "If, however" sentence in § 38–77–160 evinces the legislature's intent, in a *stacking situation,* to bind the insured....
>
> *Neither § 38–77–160* nor our prior decisions decide the [non-stacking] issue presented here[.]

373 S.C. at 41–42, 644 S.E.2d at 42–43 (emphasis added); *see also S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham,* 304 S.C. 442, 445, 405 S.E.2d 396, 398 (1991) ("[W]e interpret the pertinent language of [38–77–160] as setting a cap on the amount which can be *stacked* ....") (emphasis added). In *Burgess,* we decided a non-stacking case by considering the public policy that UIM is personal and portable rather than looking to section 38–77–160. *Id.* Consequently, we must do so again here.

---

decide whether to purchase voluntary UIM coverage. Burgess chose not to do so when insuring his motorcycle.") (emphasis added).

**3.** Stacking is defined "as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." *Giles v. Whitaker,* 297 S.C. 267, 376 S.E.2d 278 (1989).

Even if we assume arguendo that section 38–77–160 applies, legislative intent as reflected in the statutory language is ambiguous.[4] Section 38–77–160 states:

If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage *he has on the vehicle involved in the accident.*

S.C.Code Ann. § 38–77–160 (2002) (emphasis added).

The dissent argues that this provision does not distinguish between insureds who are owners and insureds who are not owners and speaks only of the "insured and named insured," which by definition includes resident relatives like Rhoden and Dickey. However, the dissent's interpretation takes the inherent ambiguity contained in the phrase, "has on the vehicle involved in the accident," and rules out the possibility that the legislature could have intended to make a distinction between an owner of the vehicle involved in the accident, like Arrieta, and non-owners such as Rhoden and Dickey. To the contrary, prior cases of this Court and the court of appeals have interpreted this provision to mean that a Class I insured is an insured or named insured who "has" a vehicle involved in the accident. *Mooneyham*, 304 S.C. at 443 n. 1, 405 S.E.2d at 397 n. 1 ("There are two classes of insureds under S.C.Code Ann. § 38–77–160 (1989). The first class, or Class I, applies when an insured or named insured *has a vehicle involved* in the accident.") (emphasis added); *Ohio Casualty Ins. Co. v. Hill,* 323 S.C. 208, 473 S.E.2d 843 (Ct.App.1996); *Am. Sec. Ins. Co. v. Howard,* 315 S.C. 47, 431 S.E.2d 604 (Ct.App.1993). "Having" a vehicle involved in the accident reasonably implies ownership of the vehicle.[5] The court of appeals, reading the same language, believed it did, and this Court in *Burgess*

---

4. If legislative intent is clear as reflected in the statutory language, any public policy as promulgated by this Court must give way because "[t]he primary source of the declaration of the public policy of the state is the General Assembly[, and] the courts assume this prerogative only in the absence of legislative declaration." *Citizens' Bank v. Heyward,* 135 S.C. 190, 204, 133 S.E. 709, 713 (1925).

5. The dictum in *Concrete Services, Inc. v. United States Fidelity and Guaranty,* 331 S.C. 506, 512, 498 S.E.2d 865, 868 (1998), suggests a contrary interpretation of section 38–77–160 more in line with the dissent's viewpoint. After deciding the case on different grounds,

raised that possibility. *See* 373 S.C. at 41–42, 644 S.E.2d at 43 (stating the issue to be whether "public policy [is] offended by an automobile insurance policy provision that limits basic UIM portability when an insured is involved in an accident while in a vehicle he *owns*, but does not insure under the policy[.]" (emphasis added)). Thus, at best, the statutory language is ambiguous, and until the legislature clarifies this particular provision of section 38–77–160 to the contrary, the public policy stated in *Burgess* that UIM is "personal and portable" governs this case.[6]

Thus, we hold South Carolina's public policy that UIM coverage is personal and portable requires UIM coverage to be provided to Rhoden and Dickey, who did not own the vehicle involved in the accident, while denied to Arrieta, who owned the vehicle involved in the accident but chose not to purchase UIM coverage.

CONCLUSION

For the foregoing reasons, we affirm the court of appeals' decision.

**AFFIRMED.**

BEATTY, J., and Acting Justice JAMES E. MOORE, concur. PLEICONES, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.

---

*Concrete Services* engaged in a "purely academic" discussion to clarify "whether, in order to stack UIM coverage, an insured must own the vehicle involved in the accident." *Id.* The court held that a Class I insured need not "own" the vehicle in order to stack UIM coverage. *Id.* at 513, 498 S.E.2d at 868. The Court stated, "[I]n order to 'have' a vehicle involved in the accident, it is necessary only that the insured qualify as a Class I insured.... We have never required 'ownership' as a prerequisite to *stacking*.... Accordingly, we hold that prior cases requiring a person to 'have' a vehicle involved in the accident as a prerequisite to *stacking* mean[s] only that a person must be a Class I insured." *Id. Concrete Services* is distinguishable as a stacking case. *Id.* More to the point, the ambiguity of section 38–77–160 remains the same, although *Concrete Services* has chosen an alternative interpretation in light of the different public policy considerations in a stacking context not present in this case. Accordingly, *Burgess's* public policy of UIM portability is determinative in this case, and not the public policy considerations of *Concrete Services*. *See Burgess*, 373 S.C. at 42, 644 S.E.2d at 43.

6. *See* n. 2, *supra*, for a discussion of this public policy.

Justice PLEICONES.

I respectfully dissent. In my view, public policy as expressed in S.C.Code Ann. § 38–77–160 (2002) requires the limitation on portability in Nationwide's policy. Section 38–77–160 reads, in relevant part:

If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.

In *Burgess v. Nationwide Mut. Ins. Co.,* we stated that "the 'If, however' sentence in § 38–77–160 ... does not literally apply to these facts since Burgess is not attempting to stack excess UIM coverage from his Nationwide policy." 373 S.C. 37, 41, 644 S.E.2d 40, 42 (2007). However, we also said that "the statute itself contains a limit on the 'portability' of UIM coverage" because "[t]he 'If, however' sentence in § 38–77–160 evinces the legislature's intent, in a stacking situation, to bind the insured to the amount of coverage he chose to purchase in the policy covering the vehicle involved in the accident." *Id.* at 41, 644 S.E.2d at 42–43. Because we found that, regardless of whether § 38–77–160 applied literally, it provided enough indication of the intent of the General Assembly to bar portability under the facts of that case, a determination of the exact application of § 38–77–160 was not necessary to our holding.

A plain reading of the statute reveals that the "If, however" sentence is not limited to stacking situations. Section 38–77–160 provides the entire legislative directive on the contents of policy provisions for UIM and excess UM coverage. It applies whenever "an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits." That is, it governs in every policy that provides UIM or excess UM coverage ("the excess or underinsured coverage"). It must apply in a case in which a policy holder seeks to import UIM coverage from a policy covering a non-

involved vehicle, regardless of whether the particular facts include stacking.[7]

The statute does not distinguish between insureds who are owners and insureds who are not owners. Rather, the statute speaks of "the insured or named insured." By definition, the "insured" includes resident relatives.[8] Under Arrieta's policy, Arrieta is the "named insured." Rhoden and Dickey are "insureds," since the parties stipulated they were resident relatives.

Moreover, the statute unmistakably conveys the legislative intent to limit UIM and excess UM coverage available to named insureds and insureds to the amount of coverage selected under the primary policy: "the policy *shall* provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident" (emphasis added). Here the primary policy, under which all of the parties *had coverage*, is Arrieta's, and it provides no UIM coverage. Under the plain reading of the statute and Rhoden's policy, the absence of UIM coverage on Arrieta's policy precluded the import of UIM coverage from Rhoden's policy.

Ruling that an insured does not have a vehicle in the accident for purposes of UIM coverage effectively alters the statute to read, "the policy shall provide that the ... named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident [but the insured must be protected to the extent of the coverage he has on any vehicle, whether or not it is involved in the accident]."[9] This directly contradicts the statute.

7. Even if the provision did not apply to a non-stacking situation by its terms, that distinction would not remove it from the evident legislative intent to limit portability of excess coverage. *See Burgess*, 373 S.C. at 41, 644 S.E.2d at 42–43. The majority's holding relies on a public policy derived from statutory provisions that do not specifically relate to excess coverage as § 38–77–160 does.

8. In relevant part, § 38–77–30 states, "Insured means the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while in a motor vehicle or otherwise...." S.C.Code Ann. (Supp.2010).

9. This is precisely the effect of the majority's ruling. Put another way, the majority's result strikes out the words "insured or" from the statute.

The General Assembly has seen fit to require that liability coverage under an automobile insurance policy extend to all resident relatives, defining the term "insured" to embrace them in § 38–77–30, but simultaneously to limit excess UM and all UIM coverage for "insureds." Thus, by virtue of their status as resident relatives, Rhoden and Dickey are insureds under Arrieta's primary policy. By law they had "coverage ... on the vehicle involved in the accident," on which no UIM coverage had been purchased. By the terms of the statute and policy language, Rhoden's, Dickey's, and Arrieta's UIM coverage under Rhoden's policy was limited to the amount of UIM coverage they had under Arrieta's policy. Although the majority is concerned that, under such a rule, non-owner insureds [10] cannot ensure that they have UIM coverage, the General Assembly has mandated that they are bound by the UIM coverage choices made by their resident relatives.

Public policy as expressed in § 38–77–160 requires limitation of UIM coverage portability when an insured seeks coverage beyond that purchased on the involved vehicle. Here, the insurance policy terms track the language of the statute, and we should not override the unambiguous terms of the insurance policy to find coverage under the guise of public policy. *Citizens' Bank, supra.* Thus, in my view, neither Rhoden nor Dickey is entitled to UIM coverage under Rhoden's policy. I therefore respectfully dissent.

KITTREDGE, J., concurs.

---

**10.** The majority cites language in *Burgess, supra,* that "raised [the] possibility" that vehicle owners might be distinguishable from non-owners for stacking purposes. In *Burgess,* the motorist sought to import UIM coverage from a policy on several vehicles he owned to the motorcycle he owned but insured under a separate policy with no UIM coverage. That case involved no consideration of a distinction between owners and non-owners, and the mere fact that the Court focused squarely on the question presented—i.e., the rights of an owner/named insured under another policy—did not hint that Class I insureds might be divisible into separate classes for purposes of importing coverage.