WILLIAMS, and THOMAS, JJ., concur.

795 S.E.2d 866

**William J. MONTGOMERY, Respondent,**

v.

**SPARTANBURG COUNTY ASSESSOR, Appellant.**

**Appellate Case No. 2013–002697**
**Opinion No. 5455**

Court of Appeals of South Carolina.

Heard September 8, 2016
Filed November 16, 2016
Rehearing Denied February 16, 2017

Ray Nelson Stevens, Michael Enrico Kozlarek, and Walter Hammond Cartin, all of Parker Poe Adams & Bernstein, LLP, of Columbia; and Virginia M. Dupont, and John Holladay Harris, both of Spartanburg County Attorney's Office, of Spartanburg, for Appellant.

James G. Carpenter and Jennifer J. Miller, both of Carpenter Law Firm, PC, of Greenville; and Lewis Warren Clayton, III, of MSI–Viking Gage, LLC, of Greenville, for Respondent.

LOCKEMY, C.J.:

In this action from the Administrative Law Court (ALC), the Spartanburg County Assessor (Assessor) appeals the ALC's order granting William J. Montgomery's motion for summary judgment. Assessor argues the ALC erred in its definition of "fair market value for agricultural purposes" in section 12-43-220(d) of the South Carolina Code (2014). We reverse.

## I. FACTS/PROCEDURAL HISTORY

Montgomery owns a tree farm located in Pauline, South Carolina. The property includes three buildings—two storage buildings for farm equipment and one mobile home that is used as an office for the farming operation. The parties agree the structures are related to the agricultural use of the

property and are neither residences nor used for any other for-profit business.

For the 2011 tax year, the Assessor valued Montgomery's property for taxation purposes at $40,641. The Assessor reached its valuation by valuing the land at $12,211 using the soil capability valuation method, valuing the structures on the land at $28,430 using the fair market value of the improvements, and adding the two figures together.

Montgomery appealed the Assessor's valuation to the ALC. Montgomery argued the entire tract, including the buildings, must be assessed as agricultural real property and the value of the buildings is subsumed in the statutory calculation of the agricultural real property value. The Assessor conceded the structures were agricultural real property and should be assessed using the 4% ratio; however, the Assessor argued section 12-43-220(d)(2)(A) only provides the process for valuing the land used for agricultural purposes, not the structures.

The ALC granted summary judgment in favor of Montgomery. The ALC found Montgomery's entire farm "must be classified and assessed as agricultural real property and the Assessor may not carve out and separately assess a small portion of the tract (such as the structures attached thereto) . . . ." Accordingly, the ALC found the Assessor improperly assessed Montgomery's property and ordered the property be "assessed and taxed based on its agricultural use value alone without adding a separate value for the improvements on the [p]roperty." This appeal followed.

## II.  STANDARD OF REVIEW

"Tax appeals to the ALC are subject to the Administrative Procedures Act (APA)." *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 73, 716 S.E.2d 877, 880 (2011). "Accordingly, we review the decision of the ALC for errors of law." *Id.* at 74, 716 S.E.2d at 881. "Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the [ALC]." *Id.*

## III.  STATUTORY INTERPRETATION

The Assessor asserts the ALC erred by finding the value of structures located on agricultural real property is already

included in, and subsumed by, the tract's fair market value for agricultural purposes. We agree.

▮▮▮ "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Centex Int'l v. S.C. Dep't of Revenue*, 406 S.C. 132, 139, 750 S.E.2d 65, 69 (2013) (quoting *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007)). "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* (quoting *Sloan*, 371 S.C. at 498, 640 S.E.2d at 459). "In interpreting a statute, '[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" *Id.* (alteration in original) (quoting *Sloan*, 371 S.C. at 499, 640 S.E.2d at 459). "Further, 'the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect.'" *Id.* (quoting *S.C. State Ports Auth. v. Jasper Cty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)). This court "must read the statute so 'that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous.'" *CFRE, LLC*, 395 S.C. at 74, 716 S.E.2d at 881 (quoting *State v. Sweat*, 379 S.C. 367, 377, 665 S.E.2d 645, 651 (Ct. App. 2008)).

For the purposes of property taxes, real property "shall mean not only land, city, town and village lots but also all structures and other things therein contained or annexed or attached thereto which pass to the vendee by the conveyance of the land or lot." S.C. Code Ann. § 12-37-10 (2014). Generally, "[a]ll property must be valued for taxation at its true value in money which in all cases is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing. . . ." S.C. Code Ann. § 12-37-930 (2014). "Agricultural real property which is actually used for such agricultural purposes shall be taxed on an assessment equal to . . . [f]our percent of its fair market value for such agricultural purposes. . . ." S.C. Code Ann. § 12-43-220(d)(1)(A) (2014); *see also* S.C. Const. art. X, § 1. "'Fair market value for agricultural purposes', when applicable to land used for the growth of timber, is defined as the productive earning power based on soil capability. . . ."

S.C. Code Ann. § 12-43-220(d)(2)(A) (2014). "Soil capability when applicable to lands used for the growth of timber products means the capability of the soil to produce such timber products of the region considering any natural deterrents to the potential capability of the soil as of the current assessment date." *Id.*

"The construction of a statute by an agency charged with its administration will be accorded most respectful consideration and will not be overturned absent compelling reasons." *Jasper Cty. Tax Assessor v. Westvaco Corp.*, 305 S.C. 346, 348, 409 S.E.2d 333, 334 (1991); *see also Gilstrap v. S.C. Budget & Control Bd.*, 310 S.C. 210, 215, 423 S.E.2d 101, 104 (1992) ("Where an administrative agency has consistently applied a statute in a particular manner, its construction should not be overturned absent cogent reasons."). "If possible, the [c]ourt will construe a statute so as to escape [an] absurdity and carry the [General Assembly's] intention into effect." *Duke Energy Corp. v. S.C. Dep't of Revenue*, 415 S.C. 351, 355, 782 S.E.2d 590, 592 (2016).

The ALC considered similar issues in two unappealed cases decided prior to this dispute.[1] *See Smith v. Clarendon Cty. Assessor*, 2011 WL 7119293 (S.C. Admin. Law Ct. Sept. 15, 2011); *Rabbit Point Farm Ltd. v. Charleston Cty. Assessor*, 1998 WL 85460 (S.C. Admin. Law Ct. Feb. 10, 1998).

The assessor in *Rabbit Point Farm* assessed a farm house on the landowner's property at the 6% ratio and the remaining agricultural property at the 4% ratio. 1998 WL 85460, at *1-2. The landowner appealed, arguing the entire tract should be assessed as agricultural real property. *Id.* The ALC found "[t]he construction of the farm house, without any supportive evidence that it is used for commercial, recreational or residential purposes, is not sufficient to change the character of the property from agricultural to residential for tax assessment purposes." *Id.* at *4. The ALC ordered the assessor to classify the property, including the structures, as agricultural real property. *Id.*

---

1. During the pendency of this appeal, the ALC again found in favor of the taxpayer in a case involving this issue. *See Dotsy, LLC v. Greenwood Cty. Assessor*, 2014 WL 1234871 (S.C. Admin. Law Ct. Mar. 24, 2014).

The facts in *Smith* are analogous to this case. The assessor valued Smith's property by adding together the soil capability of the land and the fair market value of the structures. *Smith*, 2011 WL 7119293, at *1. On appeal, the ALC found the assessor was statutorily required to use the soil capability method of valuation for the land and structures to determine the "fair market value for agricultural purposes." *Id.* at *3-4. The ALC ordered Smith's property be "assessed and taxed based on [its] agricultural use value[ ]." *Id.* at *4.

Here, both parties agree Montgomery's property should be assessed at the 4% ratio applicable to agricultural real property pursuant to section 12-43-220(d)(1)(A). The statutory definition of "real property" includes the structures attached to the land that pass by conveyance of the land. *See* § 12-37-10. Section 12-43-230 of the South Carolina Code (2014), explicitly includes within the definition of agricultural real property "any tract of real property which is used to raise, harvest or store crops, feed, breed or manage livestock, or to produce plants, trees, fowl or animals useful to man, including the preparation of the products raised thereon for man's use . . . ." Accordingly, the entire property is properly assessed at the 4% ratio to determine Montgomery's tax liability.

■ The analysis does not end there, however, because section 12-43-220(d)(1)(A) provides only the assessment ratio to apply to the property, not the valuation method. The plain language of section 12-43-220(d)(2)(A) provides the method for valuing only land used for the growth of timber, not structures also located on the property.

By its own terms, section 12-43-220(d)(2)(A) defines fair market value for agricultural purposes for *land* used for the growth of timber and *land* used for the growth of other agricultural products. It is noteworthy that the General Assembly did not use the more expansive "real property" as defined section 12-37-10. Instead, the General Assembly limited its valuation method to the "land used for the growth of timber." § 12-43-220(d)(2)(A). We find the ordinary meaning of "land" within section 12-43-220(d)(2)(A) applies only to the property used to grow timber, not the structures situated on the same property. *See Anderson v. S.C. Election Comm'n*, 397 S.C. 551, 556, 725 S.E.2d 704, 707 (2012) ("Unless there is

something in the statute requiring a different interpretation, the words used in a statute must be given their ordinary meaning."). The General Assembly would have used the defined term "real property" in section 12-43-220(d)(2)(A) if it intended to include structures attached to the land, as Montgomery argues. Because it did not, we find the value of the structures is not reflected in the soil capability valuation method and the structures must therefore be valued under the fair market value method. *See* § 12-37-930 ("All property must be valued for taxation at its true value in money which in all cases is the price which the property would bring following reasonable exposure to the market, where both the seller and the buyer are willing. . . .").

This interpretation is the same interpretation used by the Department since 1975. Sandy Houck, Jr., the Special Projects Coordinator for the Local Government Section at the South Carolina Department of Revenue (the Department), explained in an affidavit that the Department "has interpreted the South Carolina Code to provide two components to the total taxable value" for agricultural real property. He stated, "[t]he first component is the agricultural land, which must be valued according to the productive earning capacity of the soil, as stated in section 12-43-220(d)(2)(A)." He also indicated, "[t]he Department has interpreted the constitutional provisions and statutes governing agricultural real property valuation as requiring county assessors to determine the fair market value of any structures located on the agricultural real property, utilizing the valuation methods applicable to structures located on all real property. . . ." Further, he asserted, "[u]nder the Department's interpretation, the value of any structures located on the agricultural land is added to the value of the agricultural land in order to determine the total taxable value of the agricultural property." We find the Department's interpretation of the statute is reasonable and the ALC erred by failing to give proper deference to the agency's longstanding policy. *See Westvaco Corp.*, 305 S.C. at 348, 409 S.E.2d at 334 ("The construction of a statute by an agency charged with its administration will be accorded most respectful consideration and will not be overturned absent compelling reasons.").

The ALC found the Department's instructional publications support Montgomery's position. Specifically, the ALC cited

the Department's publication, *South Carolina Property Tax* that states, " 'Real property' means not only land, but also all structures and other things therein contained or annexed or attached to the land that pass ... by the conveyance of the land." *South Carolina Property Tax* § 110.1 (2015).[2] This quoted language in the Department's publication mirrors the definitional language used in section 12-37-10. This language is not applicable to this situation, however, because the term "real property" is only used in the classification statute, not the valuation statute.

The ALC also based its decision on the legislative history of the property tax statutes at issue in this case. We find the ALC's reliance on previous versions of the valuation statute is misplaced.

The legislative history of section 12-43-220(d)(1)(A) does not support Montgomery's argument that the structures on his property should be valued using the soil capability method. The first version of section 12-43-220(d)(1)(A) was enacted in 1975. *See* Act No. 208, 1975 S.C. Acts 248. The 1975 Act provided, "Agricultural real property which is actually used for such purposes shall be taxed on an assessment equal to four percent of its fair market value for such purposes...." 1975 S.C. Acts 250. In 1976, the General Assembly enacted a new version of the statute that provided, "Agricultural *land* which is actually used for such agricultural purposes shall be taxed on an assessment equal to (A) [f]our percent of its fair market value for such agricultural purposes...." Act No. 618, 1976 S.C. Acts 1648 (emphasis added). Finally, in 1979 the General Assembly again amended the Act to state, "Agricultural real property which is actually used for such agricultural purposes shall be taxed on an assessment equal to: (A) [f]our percent of its fair market value for such agricultural purposes...." Act No. 133, 1979 S.C. Acts 221. These statutes, which deal only with the *classification* of agricultural real property, have no bearing on the *valuation method* to be used when determining the owner's property tax liability.

The General Assembly also amended the precursor to section 12-43-220(d)(2)(A) in 1979. From 1976 to 1979, the statute

---

2. South Carolina Property Tax is an online resource available on the Department's website.

provided, " 'Fair market value for such agricultural purposes' is defined as the productive earning power based on soil capability...." Act No. 618, 1976 S.C. Acts 1649. During that time, only agricultural *lands* could be assessed as agricultural real property. In 1979, the General Assembly recognized the significant amount of land used for timber production and changed the valuation statute to its current version, which defines fair market value of agricultural purposes, "when applicable to *land* used for the growth of timber" as the productive earning power based on soil capability for that crop. Act No. 199, 1979 S.C. Acts 881 (emphasis added). The 1979 amendment thus created a new valuation method for land used for timber production, but did nothing to change the method of valuing any structures on the land.

Accordingly, we find the legislative history supports the Assessor's argument that the General Assembly intended to continue valuing only the land based upon the soil capability. In 1976, only lands could be assessed using the 4% rate. In 1979, when the General Assembly amended the statute to include all agricultural real property in the 4% assessment, it also changed the valuation statute to apply only to land. Therefore, the ALC erred in determining the legislative history supports Montgomery's argument regarding the valuation method to be used for structures on agricultural land.

Finally, the definition adopted by the ALC would lead to an absurd result. According to Montgomery, the only valuation method applicable to agricultural real property is the soil capability method. As a result, structures on agricultural land would be essentially exempt from tax. Montgomery acknowledged at oral argument that under his interpretation, a valuable home located on a tree farm would not be valued for tax purposes as long as that home is not a legal residence and is used for agricultural purposes. We find the General Assembly did not intend to create such an exemption. Instead, the General Assembly sought to protect farmers from rapidly escalating property tax liabilities by limiting the assessable value of the land. As Montgomery acknowledged at oral argument, to expand the exemption to include structures would allow both tractor sheds and million dollar buildings that are nominally used for agricultural purposes to avoid

assessment for property tax purposes. The legislature could not have intended such a result.

## CONCLUSION

For the foregoing reasons, the ALC's decision is **REVERSED.**

KONDUROS and MCDONALD, JJ., concur.