# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

State Farm Mutual Automobile Insurance Company,
Petitioner,

v.

Myra M. Windham, Respondent.

Appellate Case No. 2020-001693

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Lexington County
G. Thomas Cooper, Jr., Circuit Court Judge

---

Opinion No. 28121
Heard April 27, 2022 – Filed November 2, 2022

---

## AFFIRMED AS MODIFIED

---

Alfred Johnston Cox and Jessica Ann Waller, both of Gallivan, White & Boyd, PA, of Columbia, for Petitioner.

Stephen H. Cook and John K. Koon, both of Koon Cook and Walters, LLC, of Columbia, for Respondent.

---

**JUSTICE HEARN:** Respondent Myra Windham was seriously injured while driving a rental car[1] that constituted a temporary substitute vehicle under her State Farm policy. In this declaratory judgment action instituted by Petitioner State Farm, we are asked to determine whether Windham can stack her underinsured motorist ("UIM") coverage pursuant to section 38-77-160 of the South Carolina Code. The circuit court agreed with State Farm that stacking was prohibited, and the court of appeals reversed. Because both parties offer reasonable interpretations of the policy language, we believe an ambiguity exists, which we construe against the drafter. Accordingly, we agree with the court of appeals that Windham can stack and affirm as modified.

## FACTUAL AND PROCEDURAL HISTORY

Within the span of only six days and through no fault of her own, Myra Windham was in two car accidents. The first, on September 29, 2012, rendered her car inoperable. Consequently, on the date of the second accident, October 5, 2012, she was driving the rental car provided to her through the insurance of the first accident's at-fault driver.

In the second accident, Windham sustained injuries that exceeded the tortfeasor's liability insurance and sought to stack her UIM policies. Windham was insured under five separate policies[2] with State Farm at the time of the second accident. Though she was permitted to collect under one UIM policy, State Farm denied she could stack.

The parties stipulated the rental car in question meets the definition of a "temporary substitute car" as defined in Windham's State Farm policies. Further, the parties stipulate the rental car is not a vehicle shown under the "YOUR CAR" heading of the declarations page on any of the policies issued to Windham or her husband, nor does the car meet the definition of "owned by" in the policies.

---

[1] To be clear, under the terms of this policy, "temporary substitute cars" do not include all rental cars, but only those used while the insured's car is inoperable for one of the enumerated reasons. For example, vehicles rented while on vacation, for moving furniture or other goods, or while on a work trip would not qualify as temporary substitute cars under this policy.

[2] Windham paid for the maximum $100,000 of UIM coverage on each vehicle.

Upon cross-motions for summary judgment, the circuit court found the policy's "not owned by" language controlled and thus stacking was prohibited. The court of appeals reversed, relying on a separate policy provision that states when a car is both a non-owned vehicle and a "temporary substitute car," it is considered a temporary substitute car only. We then granted certiorari.

## STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). Each side in this dispute asserts the case involves a legal question, i.e., an analysis of Windham's policy with State Farm and its interplay with S.C. Code Ann. § 38-77-160. "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008). Further, while declaratory judgment actions are generally "neither legal nor equitable[,]" assessing coverage under an insurance policy "is [an action] at law." *Auto-Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 593, 748 S.E.2d 781, 785 (2013).

## LAW/ANALYSIS

I.      *S.C. Code Ann. § 38-77-160*

Stacking enables the insured to recover under more than one policy. *See Nationwide Ins. Co. v. Rhoden*, 398 S.C. 393, 400 n.3, 728 S.E.2d 477, 481 n.3 (2012). In South Carolina, an individual must be a Class I insured in order to stack. *See Ohio Cas. Ins. Co. v. Hill*, 323 S.C. 208, 211, 473 S.E.2d 843, 845 (Ct. App. 1996). "A Class I insured is an insured or named insured who *has* a vehicle in the accident. An insured is a Class II insured if none of his vehicles are involved in the accident." *Id*. (emphasis added). Here we are asked to determine whether Windham, as the operator of a rental car, is a Class I or Class II insured.

The General Assembly has set forth this delineation between Class I and Class II:

 If *none of the insured's or named insured's vehicles is involved* in the accident, coverage is available *only to the extent of coverage on any one of the vehicles* with the excess or underinsured coverage.

S.C. Code Ann. § 38-77-160 (emphasis added). Windham argues this language plainly includes rental car drivers, whereas State Farm contends the statute excludes all non-owners. In our view, neither position is supported by the statutory language.[3]

Contrary to State Farm's argument, this Court has previously recognized that the possessive relationship—"Insured's…vehicle"—means something less than ownership. *Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 331 S.C. 506, 513, 498 S.E.2d 865, 868 (1998)[4]. Equally true, however, is that the relationship between driver and vehicle must be sufficient to make the possessive language logical. *See Montgomery v. Spartanburg Cnty. Assessor*, 419 S.C. 77, 81, 795 S.E.2d 866, 868 (Ct. App. 2016) ("This court must read the statute so that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous.") (internal quotations omitted). Accordingly, the parties may contract for the coverage of certain, specifically defined vehicles; rental cars *could* be covered by the policy, but the statute in no way mandates that result. Thus, just as the court of appeals did, we

---

[3] This Court has already once found the relevant language in section 38-77-160 ambiguous "at best" and turned to public policy to guide an interpretation. *Rhoden*, 398 S.C. at 402, 728 S.E.2d at 482 ("Thus, at best, the statutory language is ambiguous, and until the legislature clarifies this particular provision of section 38–77–160 to the contrary, the public policy… governs this case.").

[4] State Farm asserts the holding in *Concrete Services* that "[w]e have never required 'ownership' as a prerequisite to stacking" is irrelevant to Windham's case. We disagree. Though answering a certified question in which the first issue was dispositive, the Court chose to continue to the second question to "clarify apparent confusion concerning whether, in order to stack UIM coverage, an insured must own the vehicle involved in the accident[.]" *Concrete Servs.*, 331 S.C. at 512, 498 S.E.2d at 868. We concluded that ownership is not required, and "on the contrary, we have consistently held the determinative factor is Class I status." *Id.* at 513, 498 S.E.2d at 868.

The Court came to this conclusion in *Concrete Services* after noting that prior cases assessed only Class I status, leaving the door open to classes of people who do not own the vehicle. *Id.* at 513, 498 S.E.2d at 868 ("Under that definition, it is patent that one may be the spouse or relative of a named insured and reside in the same household without owning the vehicle."). We therefore reiterate that Class I status, and *not* ownership, is the determinative measure of an insured's ability to stack.

must look to the policy itself to determine whether the parties intended Windham's relationship to her rental car be sufficient to render her a Class I driver, able to stack.

II.     *Windham's policy with State Farm*

This Court "must enforce, not write, contracts of insurance and [] must give policy language its plain, ordinary, and popular meaning." *Fritz-Pontiac-Cadillac-Buick v. Goforth*, 312 S.C. 315, 318, 440 S.E.2d 367, 369 (1994). In doing so, the Court must not "extend or defeat coverage that was never intended by the parties." *Id.*

Relevant portions of Windham's policy state:

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***: a. ***you***; b. any ***resident relative***; c. any other ***person*** who resides primarily in ***your*** household; or d. an employer of any ***person*** described in a., b., or c. above; nor
2. has been operated by, rented by, or in the possession of: a. ***you***; or b. any ***resident relative*** during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***…

***Owned By*** means: 1. owned by; 2. registered to; or 3. leased, if the lease is written for a period of 31 or more consecutive days…

***Temporary Substitute Car*** means a ***car*** that is in the lawful possession of the ***person*** operating it and that…replaces ***your car*** for a short time while ***your car*** is out of use due to its: a. breakdown; b. repair; c. servicing, d. damage; or e. theft; and neither ***you*** nor the ***person*** operating it own or have registered. If a ***car*** qualifies as both a ***non-owned car*** and a ***temporary substitute car***, then it is considered a ***temporary substitute car*** only…

***Your Car*** means the vehicle shown under "YOUR CAR" on the Declarations Page. ***Your car*** does not include a vehicle that you no longer own or lease.

If a ***car*** is shown on the Declarations Page under "YOUR CAR[,"] and ***you*** ask ***us*** to replace it with a ***car*** newly ***owned by you***, then the ***car*** being replaced will continue to be considered ***your car*** until the earliest of:

1. the end of the 30th calendar day immediately following the date the ***car*** newly ***owned by you*** is delivered to ***you***;

2. the date this policy is no longer in force; or 3. the date ***you*** no longer own or lease the ***car*** being replaced.

State Farm contends, and the circuit court agreed, that only owned vehicles or those listed as "your car" on the declarations page can stack, and there is no basis in the policy for finding that a temporary car is an owned vehicle under the policy. In reply, Windham argues the label temporary *substitute* car implies it took the place of her owned car for the duration of its temporary use. State Farm claims the policy intends to treat a temporary car as a non-owned car because "by its very definition, a 'temporary substitute car cannot be 'owned by' an insured." It comes to this conclusion by analyzing the section defining a temporary substitute car as a car "***you*** nor the ***person*** operating it own or have registered." State Farm then ties this to its argument that the legislature intended ownership as a prerequisite to stacking in most cases under section 38-77-160.

Immediately following the sentence quoted by State Farm is this provision which we find significant[5]: "If a ***car*** qualifies as both a ***non-owned car*** and a ***temporary substitute car***, then it is considered a ***temporary substitute car only***." Windham contends the only apparent purpose of this sentence is to remove temporary substitute cars from the consequences of being non-owned cars. While normally all temporary cars would be considered non-owned because, as State Farm points out, they are by their definition not owned, the policy ostensibly exempts them from this consequence by denominating them temporary substitute cars only.

---

[5] Although we find this sentence key to the policy's ambiguity, we are mindful that it cannot be alone dispositive. *See Beaufort Cnty. School Dist. v. United Nat. Ins. Co.*, 392 S.C. 506, 516, 709 S.E.2d 85, 90 (Ct. App. 2011) ("An insurance contract is read as a whole document so that one may not, by pointing out a single sentence or clause, create an ambiguity.") (internal quotations omitted). Instead, we look to the policy as a whole and consider this sentence in tandem with the plain language arguments asserted by Windham.

While it is debatable that this alone transforms them into owned vehicles, that is nevertheless a reasonable interpretation. On one hand temporary substitute vehicles are not-owned, but on the other, the policy clearly states they are not to be considered non-owned. Thus, both a finding of coverage and a finding against coverage could be reasonably supported by a reading of the policy language concerning non-owned and not non-owned.

State Farm posits that these inconsistent interpretations should be resolved by reading the UIM section in isolation which lists coverage exclusions and, it argues, purposefully omits temporary substitute cars *from being exempted from those exclusions*. However, this does not explain what the sentence under construction actually means nor does it remove the ambiguity created, because the basis of these exclusions still rests on ownership[6], returning us to the question of precisely where a car that is "not non-owned," as temporary substitute cars are reasonably articulated to be, fits within this policy.

Offering only the circular argument that the policy is facially clear because it is[7], State Farm produces no viable resolution to the inconsistencies presented. Therefore, facing diametrically-opposing yet reasonable interpretations, the policy is ambiguous and, construing the provision against the drafter, Windham should be permitted to stack her UIM coverage. *See Gaskins v. Blue Cross-Blue Shield of*

---

[6] The "Underinsured Motor Vehicle Coverage" section of the policy does limit stacking under "If Other Underinsured Motor Vehicle Coverage Applies," paragraph three, but only on the basis of ownership: "If: a. **you** or any **resident relative** sustains **bodily injury** or **property damage**: (1) while **occupying** a motor vehicle **not owned by you** or any **resident relative**…the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. **We** may choose one or more policies from which to make payment." (emphasis in original). The question of whether "not non-owned" means owned still infects the interpretation of this section and thus this section alone does not rescue the policy term from ambiguity.

[7] Unlike the dissent, we do not view the stipulations as dispositive or this insurance policy as a model of clarity. While the parties stipulated that the rental car did not qualify as "owned by[,]" they also stipulated that it was a "temporary substitute vehicle[.]" Neither of these stipulations resolve the fundamental question of whether the driver of a temporary substitute vehicle can stack because we must view the policy as a whole.

*South Carolina*, 271 S.C. 101, 105, 245 S.E. 2d 598, 600 (1978) ("The terms of an insurance policy must be construed most liberally in favor of the insured, and if the policy, words and language of the policy, when considered as a whole, give rise to a patent ambiguity or are capable of two or more reasonable interpretations, at least one of which favors coverage, that construction which is most favorable to the insured must be adopted."); *S.C. State Budget & Control Bd., Div. of Gen. Servs., Ins. Reserve Fund v. Prince*, 304 S.C. 241, 248, 403 S.E.2d 643, 647 (1991) (holding that when an "internal inconsistency in the policy renders it ambiguous and when a policy is susceptible to more than one reasonable interpretation, one of which would provide coverage, this Court must hold as a matter of law in favor of coverage") (internal quotations omitted); *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (holding that conflicting terms in an insurance policy are construed against the insurer).[8]

Therefore, we find the policy's contradictory provisions support both positions advanced by the parties. Construing this ambiguity in favor of coverage for the insured, Windham is a Class I insured able to stack.

For the forgoing reasons, the court of appeals is **AFFIRMED AS MODIFIED**.

**Acting Justices John D. Geathers and H. Bruce Williams, concur. JAMES, J., dissenting in a separate opinion in which FEW, J., concurs.**

---

[8] Counsel for Windham argued before the circuit court that this provision of the policy was ambiguous, but the circuit court ruled in favor of the insurer. Thereafter, the court of appeals found the plain language of the policy dispositive and did not discern an ambiguity. While neither party has argued before us that this policy is ambiguous, their competing interpretations are both reasonable, therefore creating an ambiguity which must be construed against State Farm and in favor of coverage. *Clegg*, 377 S.C. at 655, 661 S.E.2d at 797.

**JUSTICE JAMES:** I dissent. Windham has been paid the $100,000 in UIM coverage to which she is entitled. The provisions of the State Farm policy align with applicable statutes and, under these facts, unambiguously prohibit Windham from stacking UIM coverage because none of her vehicles was involved in the accident.

## BACKGROUND

Windham and her husband were the named insureds under five State Farm automobile insurance policies that covered separate vehicles; one policy covered their Toyota Camry. Each policy contains identical language, and each provides $100,000 in UIM coverage for covered damages. The Camry was damaged in a two-car wreck on September 29, 2012, with a driver insured by Allstate. Allstate provided Windham a rental vehicle owned by Enterprise Leasing Corporation. Six days later, Windham was driving the rental vehicle and was involved in a second accident with Jennifer McArdle. Windham claims the second accident was McArdle's fault and further claims she sustained damages exceeding the total of McArdle's liability insurance coverage and the $500,000 in UIM coverage from her five State Farm policies. Windham has been paid the full amount of McArdle's liability coverage. State Farm paid Windham the $100,000 limit of UIM coverage from one policy and claims Windham cannot stack UIM coverage from the other four policies. State Farm commenced this declaratory judgment action to resolve the stacking issue.

The parties filed cross-motions for summary judgment, and the circuit court granted State Farm's motion, concluding Windham could not stack UIM coverage under the terms of her policy and South Carolina Code section 38-77-160 (2015). The circuit court explained the "clear and unambiguous language" of Windham's policy prohibits stacking when the insured is injured in a vehicle that is not "owned by" the insured. The circuit court found that because the rental car was not "owned by" Windham, the policy prohibited stacking. The circuit court further ruled the policy's anti-stacking provision was consistent with section 38-77-160: "Because there is no dispute that Windham did not own the vehicle involved in the accident and [because] none of her vehicles were involved in the accident, she did not 'have' a vehicle in the accident as is required by the statute." *See* S.C. Code Ann. § 38-77-160 ("If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.").

The court of appeals reversed. *State Farm Mut. Auto. Ins. Co. v. Windham*, 432 S.C. 134, 850 S.E.2d 633 (Ct. App. 2020). The court of appeals explained section

38-77-160 permits a Class I insured to stack UIM coverage, and "a Class I insured is an insured or named insured who 'has' a vehicle involved in the accident." *Id.* at 149, 850 S.E.2d at 641 (alteration omitted) (quoting *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 401, 728 S.E.2d 477, 481 (2012)). The court of appeals held Windham "had" a vehicle involved in the accident because the rental car met the policy definition of "temporary substitute car" and, therefore, "took the place of her vehicle[.]" *Id.*

The court of appeals did not meaningfully discuss the policy's anti-stacking provision, but it appears the court of appeals held the provision conflicts with section 38-77-160 and is unenforceable. *See id.* at 148, 850 S.E.2d at 640 ("We have never required 'ownership' as a prerequisite to stacking . . . . Accordingly, we hold that prior cases requiring a person to 'have' a vehicle involved in the accident as a prerequisite to stacking mean[s] only that a person must be a Class I insured." (emphasis omitted) (quoting *Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 331 S.C. 506, 513, 498 S.E.2d 865, 868 (1998))).

The relevant portion of section 38-77-160 states,

If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. <u>If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.</u>

(emphasis added). In case law, we have explained stacking in terms of Class I and Class II insureds. A Class I insured is a named insured, his or her spouse, or resident relative who "has a vehicle involved in the accident." *S.C. Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 443 n.1, 405 S.E.2d 396, 397 n.1 (1991); *Fireman's Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 295 S.C. 538, 544, 370 S.E.2d 85, 88 (1988); *Concrete Servs.*, 331 S.C. at 512, 498 S.E.2d at 868. A Class II insured is a named insured, his or her spouse, or resident relative "whose vehicle was not involved in the accident." *Mooneyham*, 304 S.C. at 443 n.1, 405 S.E.2d at 397 n.1; *Fireman's Ins. Co.*, 295 S.C. at 544, 370 S.E.2d at 88; *Concrete Servs.*, 331 S.C. at 512-13, 498 S.E.2d at 868. Absent policy provisions broadening the right to stack UIM coverage, only Class I insureds can stack such coverage.

"[I]nsurance policies are contracts to be interpreted in accord with contract law." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 52,

717 S.E.2d 589, 595 (2011).  I will first review the State Farm policy to ascertain the parties' intent.  *See Nationwide Ins. Co. of Am. v. Knight*, 433 S.C. 371, 375, 858 S.E.2d 633, 635 (2021) (explaining that a coverage analysis begins with the insurance policy and then looks to whether its provisions "violate[] any legislatively-expressed public policy").

## STIPULATIONS AND POLICY PROVISIONS

The parties entered into several stipulations of fact, most of which relate to policy provisions pertinent in this case.  These stipulations and policy provisions are:

First, Windham and her husband are the insureds under each policy.

Second, none of the Windhams' vehicles was involved in the second accident.

Third, the rental vehicle was a "temporary substitute car."  Each policy defines "*Temporary Substitute Car*" as:

[A] *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

    a. breakdown;

    b. repair;

    c. servicing;

    d. damage; or

    e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

The temporary substitute car provision also states, "If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only."

Fourth, each policy defines "*Non-Owned Car*" as:

[A] *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:

    a. *you*;

    b. any *resident relative*;

    c. any other *person* who resides primarily in *your* household; or

    d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

    a. *you*; or

    b. any *resident relative*

    during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

Fifth, the parties stipulate the rental vehicle was not "owned by" Windham. Each policy defines "*Owned By*" as:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

Sixth, the rental vehicle is not shown on any declarations page as "YOUR CAR." Each policy defines "*Your Car*" as "the vehicle shown under 'YOUR CAR' on the Declarations Page. *Your car* does not include a vehicle that *you* no longer own or lease."

Seventh, the UIM section of each policy contains the following paragraph concerning an insured's ability to stack coverage:

3. If:
    a. *you* or any *resident relative* sustains *bodily injury* or *property damage*:

(1) while *occupying* a motor vehicle not *owned by you* or any *resident relative*; or

(2) while not *occupying* a motor vehicle; and

b. Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by the *State Farm Companies* apply to the same *bodily injury* or *property damage*, then

the maximum amount that may be paid from all such policies combined is the single highest limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

Paragraph 3 prohibits stacking if the insured is injured while occupying a vehicle that is not "owned by" the named insured, his or her spouse, or resident relative. This paragraph unambiguously prohibits Windham from stacking and does not violate section 38-77-160.

## ANALYSIS

I. *The policy unambiguously prohibits stacking when an insured is injured in an accident while occupying a temporary substitute car.*

As noted above, the last sentence of the "temporary substitute car" definition provides, "If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only." Because Windham's rental car qualifies as both, it is a temporary substitute car only. Windham stipulates the rental car does not meet the policy definition of a car "owned by" her, and the policy's anti-stacking provision plainly provides Windham cannot stack if she was "*occupying* a motor vehicle not *owned by* [her] or any *resident relative*."

In the face of Windham's stipulation that the rental car was not "owned by" her, Windham curiously argues that because the rental car is a temporary substitute car and not a "non-owned car," the rental car must "be treated like an owned vehicle even though [Windham] does not actually own it." Equally curious is Windham's argument that her previously damaged Camry was "involved" in the second accident for stacking purposes, as she stipulated that none of her vehicles was involved in that accident.

The majority rightly acknowledges the reasonableness of State Farm's argument that under the policy's terms, a temporary substitute car is not "owned by" the insured. However, the majority joins in Windham's torture of the plain language of the policy and concludes:

> While normally all temporary [substitute] cars would be considered non-owned because, as State Farm points out, they are by their definition not owned, the policy ostensibly exempts them from this consequence by denominating them temporary substitute cars only. <u>While it is debatable that this alone transforms them into owned vehicles, that is nevertheless a reasonable interpretation.</u>

(emphasis added). In reaching this conclusion, the majority ignores the parties' stipulation that Windham did not own the rental car. The majority then concludes State Farm's and Windham's interpretations are equally reasonable and therefore result in an ambiguity in the policy that must be resolved against State Farm. The majority rewrites the policy to provide that if rental cars qualify as both non-owned cars and temporary substitute cars, they are "not non-owned," thus transforming them into owned cars. I disagree because there is no ambiguity. Even absent the stipulations, the only reasonable interpretation of the policy is that Windham did not own the rental car.

Advancing a similar argument, Windham cites *Bell v. Progressive Direct Insurance Co.*[9] for the proposition that State Farm's reading of the policy "ignores the principle that insurance contracts are to be read in accordance with reasonable expectations of insureds." Specifically, Windham points to the definition of "temporary substitute car" as a car that "replaces" a car listed on the declarations page. Windham claims it was her reasonable expectation that the rental car "replace" the Camry for all purposes under the policy, including UIM coverage. Windham's invocation of the doctrine of reasonable expectations should fail, as we specifically noted in *Bell* that "the doctrine cannot be used to alter the plain terms of an insurance policy." *Id*. at 581, 757 S.E.2d at 407. The plain terms of the State Farm policy compel the conclusion that the rental car was not owned by Windham.

II.    *Windham did not have a vehicle involved in the accident.*

As acknowledged by the majority and the court of appeals, a Class I insured is a named insured, his or her spouse, or resident relative who has a vehicle involved

---

[9] 407 S.C. 565, 578-81, 757 S.E.2d 399, 405-07 (2014).

in the accident. *Windham*, 432 S.C. at 146, 850 S.E.2d at 639. Only a Class I insured may stack UIM coverage. *Concrete Servs.*, 331 S.C. at 509, 498 S.E.2d at 866; *see Mooneyham*, 304 S.C. at 444, 405 S.E.2d at 397.[10]

In their effort to determine what it means "to have" a vehicle involved in the accident, the court of appeals and the majority mistakenly seize upon our isolated statement in *Concrete Services* that "[w]e have never required 'ownership' as a prerequisite to stacking" to conclude section 38-77-160 contains no ownership requirement. *Windham*, 432 S.C. at 149, 850 S.E.2d at 641 (quoting *Concrete Servs.*, 331 S.C. at 513, 498 S.E.2d at 868). A proper reading of *Concrete Services* demonstrates section 38-77-160 prohibits stacking when the named insured is injured in a vehicle owned by neither the named insured, his or her spouse, nor a resident relative.

*Concrete Services* presented two certified questions related to stacking. Ann Mickle was injured while driving a vehicle owned by her husband's company, Concrete Services. Concrete Services was the named insured on the vehicle's insurance policy, and Mickle's husband was the sole shareholder of Concrete Services. Answering the first certified question, we held Mickle was not a Class I insured because the corporation—the named insured—could not possibly have a spouse or resident relatives. We therefore held Mickle could not stack.

Even though our answer to the first certified question resolved the case, we then turned to the second certified question: "Where the South Carolina Appellate Courts have required an insured to 'have' a vehicle involved in the accident in order to stack UIM coverage, is it required that the insured own the vehicle involved in the accident?" *Concrete Servs.*, 331 S.C. at 508, 498 S.E.2d at 865. We answered that certified question "no" and held section 38-77-160 does not require the insured to <u>personally</u> own the vehicle involved in the accident in order to stack. We held, "[I]n order to 'have' a vehicle involved in the accident, it is necessary only that the insured qualify as a Class I insured." *Id.* at 513, 498 S.E.2d at 868. We recognized that in many instances, the spouse or resident relative of the named insured does not own the insured vehicle. We explained that under the Class I definition, "it is patent that one may be the spouse or relative of a named insured and reside in the same household without owning the vehicle. We have never required 'ownership' as a prerequisite to stacking; on the contrary, we have consistently held the determinative factor is Class I status." *Id.* (footnote omitted).

---

[10] Of course, the insurer and the insured can contract for coverage greater than what is minimally required by statute.

The context of our holding in *Concrete Services* is key. The majority isolates the statement "[w]e have never required 'ownership' as a prerequisite to stacking" and concludes section 38-77-160 is completely devoid of any ownership requirement. This reading of *Concrete Services* ignores the plainly stated context of our holding— even if the named insured's spouse or resident relative does not personally own the vehicle involved in the accident, that person may stack UIM coverage if the named insured had a vehicle involved in the accident. At the least, we require the named insured to own the vehicle. Accordingly, the majority's reliance on *Concrete Services* for the blanket proposition that ownership is not a prerequisite to stacking is misplaced.

Ultimately, the answer to the question of whether section 38-77-160 contains an ownership requirement lies in the language employed by the General Assembly. To repeat, section 38-77-160 provides, "If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage." "Insured" is defined to include the named insured, his or her spouse, and resident relatives. *See* S.C. Code Ann. § 38-77-30(7). Incorporating this definition, section 38-77-160 plainly allows a policy to prohibit stacking if the named insured, his or her spouse, or resident relatives do not own a vehicle involved in the accident. This interpretation is supported by both the plain language of the statute and an in-context review of *Concrete Services*.

## CONCLUSION

"As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 598, 762 S.E.2d 705, 712 (2014). The anti-stacking provision in Windham's policy does not contravene section 38-77-160, nor does it expand Windham's right to stack beyond the statutory minimum required by section 38-77-160.

Because the rental car was not owned by Windham, her husband, or a resident relative, Windham did not "have" a vehicle involved in the accident. Windham has been paid the $100,000 in UIM coverage to which she is entitled, and she cannot stack additional UIM coverage under the terms of the policy. Therefore, I would reverse the court of appeals' decision.

**FEW, J., concurs.**